**Friedrich LU, Plaintiff,**

v.

**Thomas M. MENINO, et al., Defendants.**

Civil Action No. 14–13053–LTS.

United States District Court, D. Massachusetts.

Signed March 10, 2015.

Friedrich Lu, Boston, MA, pro se.

Nicole M. O'Connor, City of Boston Law Department, Wilbur E. Commodore, Boston Housing Authority, Timothy Joseph Harrington, Boston Public Health Commission, Boston, MA, for Defendants.

## ORDER ON REPORT AND RECOMMENDATION

SOROKIN, District Judge.

After de novo review of the Report and Recommendation issued by Magistrate Judge Bowler on March 2, 2015, Doc. No. 41, in light of the objections filed by the Plaintiff, Doc. No. 47, a correction to those

objections, Doc. No. 48, and the Motion to Amend the Complaint filed after the Report and Recommendation, Doc. No. 44, the Court hereby ADOPTS the Report and Recommendation for the reasons stated therein and OVERRULES the objections filed by the Plaintiff. Accordingly, the Court ALLOWS the City Defendants' Motion to Dismiss, Doc. No. 17, the BPHC's Motion to Dismiss, Doc. No. 16, the BHA's Motion to Dismiss, Doc. No. 32, and DENIES the Plaintiff's Motions for Summary Judgment, Doc. Nos. 19, 23, 37, the City Defendants' Motion for Sanctions and Injunctive Relief, Doc. No. 11, and DENIES AS MOOT the City Defendants' First Motion to Dismiss, Doc. No. 8.

The Plaintiff's Motion to Amend the Complaint, Doc. No. 44, is DENIED. The proposed amendments are futile or otherwise precluded by the Court's decision on the Complaint. The Motion for Reconsideration on Service of Process, Doc. No. 42, is DENIED.

The only claim remaining in this case is Count IV against the BHA, as it did not move to dismiss this claim. Count IV purports to assert a common law fraud claim against the BHA. Having dismissed the federal claims in this case and perceiving no discernible independent basis for the exercise of subject matter jurisdiction by the Court over this claim, the Court declines to exercise supplemental jurisdiction over this claim, at this early stage of the case. Accordingly, this claim is DISMISSED WITHOUT PREJUDICE.

The Clerk shall close this case.

SO ORDERED.

FRIEDRICH LU, Plaintiff,

v.

THOMAS M. MENINO, MARTIN J. WALSH, WILLIAM F. SINNOTT, EUGENE L. O'FLAHERTY, CAROLINE O. DRISCOLL, DAVID WATERFALL, GEORGE HULME, BERTHE M. GAINES, DONNA M. DEPRISCO, ANGELO M. SCACCIA, JAMES CARROLL, KARYN M. WILSON, JEFFREY B. RUDMAN, ZAMAWA ARENAS, A. RAYMOND TYE, EVELYN ARANA–ORTIZ, PAUL LA CAMERA, CAROL FULP, BYRON RUSHING, DENNIS LEHANE, JOHN T. HAILER, LAURA DEBONIS, JOHN DUNLAP, PAUL CURRAN, AMY E. RYAN, BOSTON SCHOOL COMMITTEE, BOSTON HOUSING AUTHORITY, BOSTON REDEVELOPMENT AUTHORITY, BOSTON PUBLIC HEALTH COMMISSION, TRUSTEES OF BOSTON PUBLIC LIBRARY, Defendants.

REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS (DOCKET ENTRY # 8); DEFENDANTS' AMENDED MOTION TO DISMISS (DOCKET ENTRY # 17); DEFENDANT BOSTON PUBLIC HEALTH COMMISSION'S MOTION TO DISMISS (DOCKET ENTRY # 16); MOTION TO DISMISS AND IN THE ALTERNATIVE FOR JUDGMENT ON THE PLEADINGS (DOCKET ENTRY # 32); PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOCKET ENTRY # 23); PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT (DOCKET ENTRY # 19); PLAINTIFF'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT (DOCKET ENTRY # 37); DEFENDANTS' MOTION FOR SANCTIONS AND INJUNCTIVE RELIEF (DOCKET ENTRY # 11)

BOWLER, United States Magistrate Judge.

Pending before this court is a motion to dismiss filed by defendants Thomas M.

Menino ("Mayor Menino"), Martin J. Walsh ("Mayor Walsh"), William F. Sinnott ("Sinnott"), Eugene L. O'Flaherty, Caroline O. Driscoll, David Waterfall, George Hulme, Berthe M. Gaines, Donna M. Deprisco, Angelo M. Scaccia, James Carroll, Karyn M. Wilson, Jeffrey B. Rudman, Zamawa Arenas, A. Raymond Tye, Evelyn Arana–Ortiz, Paul La Camera, Carol Fulp, Byron Rushing, Dennis Lehane, John T. Hailer, Laura Debonis, John Dunlap, Paul Curran and Amy E. Ryan ("the City defendants") to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). (Docket Entry # 17). The motion duplicates a prior motion to dismiss (Docket Entry # 8) except for the addition of three City defendants inadvertently omitted from the previous motion.

Defendant Boston Housing Authority ("BHA") moves to dismiss the complaint under Rule 12(b)(6) or, in the alternative, for summary judgment. (Docket Entry # 32). Defendant Boston Public Health Commission ("BPHC") also seeks to dismiss the complaint under Rule 12(b)(6). (Docket Entry # 16).

Plaintiff Friedrich Lu ("plaintiff"), proceeding pro se, opposes the motions (Docket Entry ## 25, 28, 36) and separately moves for partial summary judgment as to liability (Docket Entry ## 20, 23, 37). Because of plaintiff's pro se status, this court considers the arguments he raises in the summary judgment motions, including the extortion argument (Docket Entry # 37), as also raised in opposition to all three motions to dismiss.

The City defendants additionally seek monetary sanctions against plaintiff and a permanent injunction prohibiting plaintiff from commencing other lawsuits for the conduct alleged in this case. (Docket Entry # 11). The basis for the sanctions and the injunction is plaintiff's repeated failure to comply with a March 2002 Order entered in *Lu v. Harvard School of Dental Medicine et al.,* Civil Action No. 00–11492–MLW ("the March Order"). The March Order required plaintiff to attach a copy of the March Order and a certification that he complied in good faith with the March Order to any complaint plaintiff filed in the United States District Court for the District of Massachusetts. (Docket Entry # 11–1). Plaintiff opposes the motion. (Docket Entry # 21).

The complaint alleges that the City of Boston ("the City") in a number of court cases and on its website and budget adopted positions that certain entities, such as the Trustees of the Boston Public Library ("the Trustees"), were departments or agencies of the City in order to prevail in legal actions or to create "fiefdoms" for the late Mayor Menino. (Docket Entry # 1). Mayor Walsh then "inherited the machine" and "perpetuate[d] the schemes," according to the complaint. (Docket Entry # 1). The complaint outlines the City's "contradictory" positions. For example, in a Massachusetts Superior Court (Suffolk County) case[1] and in a prior case plaintiff filed in Massachusetts Superior Court (Suffolk County)[2] the City asserted that BPHC and the Trustees were, respectively, a "corporation *separate* from the City" (Docket Entry # 1, ¶ 9) (emphasis added) and "a private(!) Corporation" (Docket Entry # 1, ¶ 13). These and other examples of the City's and certain other defendants' contradictory positions reveal that defendants[3] are "moving

---

1. *Arnston v. Trustees of Boston Public Library,* Civil Action No. 2009–3102H ("the *Arnston* case").

2. *Lu v. Doe,* Civil Action No. 2001–0129E.

3. "Defendants" refers to the City defendants, the Boston School Committee ("BSC"), the Boston Redevelopment Authority ("BRA"), BPHC and the Trustees.

goal posts" to achieve legal victories and to defraud plaintiff as well as the courts, according to the complaint. (Docket Entry # 1, ¶ 4).[4]

Count One of the four count complaint alleges that defendants engaged in a pattern of racketeering activity to gain control over "[t]he enterprises," defined as "their respective (government) offices," in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b) ("section 1962(b)"). (Docket Entry # 1, ¶ 18). Count Two asserts that defendants, except for Mayors Menino and Walsh, employed or associated with "an enterprise" and engaged in the activities of the enterprise "through a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c) ("section 1962(c)"). (Docket Entry # 1, ¶ 19). The enterprise depicted in Count Two, which this court also considers with respect to Count One, comprises "both Law Department and Office of Labor Relations of the City, Boston School Committee, Boston Housing Authority, Boston Redevelopment Authority, Boston Public Health Commission, plus Trustees of Boston Public Library." (Docket Entry # 1, ¶ 19). Count Three alleges that defendants conspired to violate sections 1962(a), (b) or (c) in violation of 18 U.S.C. § 1962(d) ("section 1962(d)"). Count Four is based on common law fraud.

Among other arguments, the City defendants and BHA contend that the complaint fails to set out predicate acts of racketeering. The City defendants additionally argue that Count Four fails to make out a viable fraud claim because it is bereft of any alleged promise or statements that induced plaintiff's reliance. The City defendants also submit that Count Four does not comply with Fed.R.Civ.P. 9(b) ("Rule 9(b)"). BPHC argues that both the RICO claims and the fraud claim fail to satisfy Rule 9(b). Pointing out that the complaint does not allege that plaintiff had any contact with BPHC, BPHC submits that the complaint fails to set out any facts to support the RICO and fraud counts. Initially, this court turns to the motions to dismiss before addressing the summary judgment motions.

## I. *Defendants' Motions to Dismiss*

The standard of review for a Rule 12(b)(6) motion is well established. To survive a Rule 12(b)(6) motion to dismiss, the complaint must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Boroian v. Mueller*, 616 F.3d 60, 65 (1st Cir.2010) (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Feliciano–Hernandez v. Pereira–Castillo*, 663 F.3d 527, 533 (1st Cir.2011) (internal quotation marks and citations omitted). Discarding legal conclusions and taking the facts in the complaint as "true and read in a plaintiff's favor even if seemingly incredible," the complaint "must state a plausible, but not a merely conceivable, case for relief." *Se-*

---

4. In full, paragraph four states that, "The instant complaint is about [defendants] moving goal posts[ ] to achieve victories in a fell swoop (especially through, but certainly not limited to, motions to dismiss) to defraud plaintiffs and courts." (Docket Entry # 1, ¶ 4).

*púlveda–Villarini v. Dept. of Educ.*, 628 F.3d 25, 29 (1st Cir.2010).

In evaluating a Rule 12(b)(6) motion, the court may consider a limited category of documents outside the complaint without converting the motion into one for summary judgment. Such documents include matters of public record, facts susceptible to judicial notice and documents sufficiently referred to in the complaint. *See Butler v. Balolia,* 736 F.3d 609, 611 (1st Cir.2013) (supplementing facts in complaint "by examining 'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice'"); *Freeman v. Town of Hudson,* 714 F.3d 29, 36 (1st Cir.2013). The complaint sufficiently refers to a December 8, 2011 letter by the Chair of the Committee on Economic Development and Planning of the Boston City Council and a related "pdf file," which are therefore part of the Rule 12(b)(6) record. (Docket Entry # 1, ¶ 14(b)) (Docket Entry # 22, p. 10).

█ Although BHA cites to Rule 12(b)(6) and argues that counts one, two and three fail to state a claim for relief, it filed an answer almost one month before filing the Rule 12(b)(6) motion. Under Rule 12(b)(6) "a motion raising the defense of failure to state a claim upon which relief may be granted must be made before the service of a responsive pleading." *Puckett v. U.S.,* 82 F.Supp.2d 660, 663 (S.D.Tex. 1999); Fed.R.Civ.P. 12(b). Rule 12(h), however, allows a party to raise the defense of a "[f]ailure to state a claim upon which relief can be granted in a motion under Rule 12(c)" or "at trial." Fed. R.Civ.P. 12(h)(2); *see* 5C Charles Alan Wright et al. *Federal Practice and Procedure* § 1361 (3rd ed.2014) (defense of "failure to state a claim upon which relief can

be granted, Rule 12(b)(6)," is "preserved from the waiver mechanism by the express terms of subdivision (h)").[5] The standard of review for a Rule 12(c) motion is synonymous to the standard of review for a Rule 12(b)(6) motion. *See Perez–Acevedo v. Rivero–Cubano,* 520 F.3d 26, 29 (1st Cir. 2008) (Rule 12(c) motion " 'is treated much like a Rule 12(b)(6) motion to dismiss'"); *R.G. Financial Corp. v. Vergara–Nunez,* 446 F.3d 178, 182 (1st Cir.2006) (because Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in nonmovant's favor). When an answer filed before a Rule 12(b)(6) motion raises the defense of a failure to state a claim for relief, a number of courts recharacterize the Rule 12(b)(6) motion as a Rule 12(c) motion. *See Puckett v. U.S.,* 82 F.Supp.2d at 663 (if defendant included defense in answer, "thereby giving notice, then courts generally allow Rule 12(b)(6) motions filed after the answer" and consider them "as a Rule 12(c) motion for judgment on the pleadings"); *Provident Life and Casualty Insurance Co. v. Ginther,* 1997 WL 9779, at *1 (W.D.N.Y. Jan. 3, 1997) ("neither party will be prejudiced if this Court rules on the merits of Ginther's [Rule 12(b)(6) ] motion, recharacterized as one for a judgment on the pleadings, which," absent a delay of the trial, can be "brought at any later time"). In fact, numerous courts consider a Rule 12(b)(6) motion on the merits or construe it as a Rule 12(c) motion even though the defendant filed the Rule 12(b)(6) motion after filing an answer. *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 n. 2 (10th Cir.2002) ("[i]f the

**5.** Plaintiff's waiver argument (Docket Entry # 36) as it applies to BHA's Rule 12(b)(6)

motion is therefore misplaced.

defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings"); *Gates v. Black Hills Health Care Systems (BHHCS)*, 997 F.Supp.2d 1024, 1029 (D.S.D.2014) ("courts may treat an untimely motion to dismiss under Rule 12(b)(6) as a Rule 12(c) motion for judgment on the pleadings"); *NanoMech, Inc. v. Suresh*, 2013 WL 4805692, at *2 (W.D.Ark. Sept. 9, 2013); *Gerakaris v. Champagne*, 913 F.Supp. 646, 650 (D.Mass.1996) (examining Rule 12(b)(6) motion on the merits notwithstanding "technical defect" of filing the motion two days after filing answer); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990).

Here, BHA's answer raised the defense that "plaintiff fails to state a claim upon which relief can be granted." (Docket Entry # 14, ¶ 22). The answer also either denied the statements in the complaint or asserted that it lacked sufficient information to admit or deny the allegations. *Goodman v. Williams*, 287 F.Supp.2d 160, 161 (D.N.H.2003) (although Rule 12(c) review considers factual allegations in complaint and answer, court "treats any allegations in the answer that contradict the complaint as false"); *accord Rimmer v. Colt Industries Operating Corporation*, 656 F.2d 323, 326 (8th Cir.1981). Given the notice, the lack of prejudice and the similar standard of Rule 12(b)(6) and Rule 12(c) motions, this court construes BHA's Rule 12(b)(6) motion as a Rule 12(c) motion. Like a Rule 12(b)(6) motion, a court construes the facts in the pleadings in favor of the non-movant and "may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." *R.G. Financial Corp. v. Vergara–Nunez*, 446

F.3d at 182. In evaluating a Rule 12(c) motion, a court may also consider " 'documents central to the plaintiffs' claim' " and " 'documents sufficiently referred to in the complaint.' " *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir.2007).

Viewing the facts in plaintiff's favor and liberally construing the complaint in light of plaintiff's pro se status, the facts are as follows. Recitation of the various cases in the complaint is not to set out legal arguments or conclusions but, rather, to show the factual allegations regarding the contradictory positions taken by various defendants.

## FACTUAL BACKGROUND

In a 1994 civil case against the "Boston Public Library" filed in Massachusetts Superior Court (Suffolk County), *Balalis v. Boston Public Library*, Civil Action No. 1994–5628E ("the *Balalis* case"), the City took the position that " '[t]he Boston Public Library' " was not a proper defendant because " '[t]he Trustees of the Public Library of the City of Boston "is not an entity separate and apart from the City." ' " (Docket Entry # 1, ¶ 7) (quoting the City's memorandum in support of motion to dismiss) (quoting *Holt v. City of Boston*, 24 Mass.App.Ct. 175, 507 N.E.2d 766, 768–769 (1987)). As stated in the complaint, the *Holt* case, which involved personal injuries to an employee of the Trustees of Health and Hospitals of the City of Boston,[6] had "nothing to do with the Trustees of Boston Public Library." (Docket Entry # 1, ¶ 7). The City was therefore "[p]ulling a fast one" on its legal "adversaries and courts." (Docket Entry # 1, ¶ 7). Although the court did not reach the issue of whether the City was " 'the only appropriate entity to be sued,' " the court ruled in favor of the Trustees

---

**6.** *See Holt v. City of Boston*, 507 N.E.2d at 767.

and, therefore, also in favor of the City. (Docket Entry # 1, ¶ 7).

Defendants John Dunlap ("Dunlap") and Paul Curran ("Curran"), the "director or head of Office of Labor Relations" for the City, approved the City's representations to the "state Department of Labor Relations" that the Trustees is an agency of the City. (Docket Entry # 1, ¶ 15). Dunlap's and Curran's representations caused the state Department of Labor Relations to decide in favor of the City in eight administrative proceedings. (Docket Entry # 1, ¶ 15).

Three other cases cited in the complaint depict the close relationship between the City on the one hand and BSC and BRA on the other hand. The cases also exemplify the position taken by the City that BSC and BRA were agencies of the City. (Docket Entry # 1, ¶¶ 8, 12). In *Wyatt v. City of Boston*, 35 F.3d 13 (1st Cir.1994) ("the *Wyatt* case"), the City appointed a special assistant corporate counsel to represent the "supposedly independent" BSC. (Docket Entry # 1, ¶ 8). In *Dunn v. City of Boston*, 75 Mass.App.Ct. 556, 557 n. 3, 915 N.E.2d 272 (Mass.App.Ct.2009) ("the *Dunn* case"), the plaintiff was injured at Boston's City Hall Plaza ("the plaza"). (Docket Entry # 1, ¶ 12). The City did not own the plaza. Rather, BRA was the owner. (Docket Entry # 1, ¶ 12). The City nevertheless chose to defend the case. (Docket Entry # 1, ¶ 12). In a case plaintiff filed in United States District Court for the District of Massachusetts, *Lu v. George Hulme and Trustees of the Boston Public Library*, Civil Action No. 12–1117–MLW ("the *Hulme* case"), the City argued that the "Trustees of Boston Public Library was a City agency, thus justifying [the] City's legal representation." (Docket Entry # 1, ¶ 14).

The City's website and budget also describe separate entities as " 'Boston' agencies" in order to avoid liability by asserting that they are not the proper parties but, instead, that the City is the proper party. (Docket Entry # 1, ¶¶ 4, 6, 7). Similarly, the City refers to the Trustees as the " 'library department' " and to BSC as the " 'school department.' " (Docket Entry # 1, ¶ 5) (emphasis added). Moreover, the "Boston City Charter never identifies its departments." (Docket Entry # 1, ¶ 5).

Mayors Menino and Walsh exerted their authority and control over agencies by making them "fiefdoms" and referring to them as departments. (Docket Entry # 1, ¶¶ 5, 6). For example, Mayor Walsh purportedly "terrorized" BRA employees when he eliminated a division within the BRA and, "without authority," fired more than a dozen BRA employees in March 2014.[7] (Docket Entry # 1, ¶¶ 5(b), 16). As stated in the complaint, the "City formed a physical 'mayor's office' within the supposedly independent BRA" and the

---

7. The complaint draws the legal conclusion that Mayor Walsh's conduct violated "the Hobbs Act." (Docket Entry # 1, ¶ 16); *see Soto–Torres v. Fraticelli*, 654 F.3d 153, 157 n. 2 (1st Cir.2011) ("complaint's allegations that Soto–Torres was 'illegally and unreasonabl[y] detained' and that 'excessive force' was used in pushing him to the floor are legal conclusions that are not to be credited"); *see also Dixon v. Shamrock Financial Corp.*, 522 F.3d 76, 79 (1st Cir.2008) (accepting "well-pleaded facts as true, but reject[ing] 'unsupported conclusions or interpretations of law' " in reviewing Rule 12(b)(6) dismissal). Arguably, the complaint's use of the terms "fiefdoms," "threats," "cover-up" and "terrorizing" constitutes no more than "bald assertions" that lie outside the Rule 12(b)(6) record. *See Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28, 32 (1st Cir.2014) (" 'bald assertions' and 'unsupportable conclusions' are properly disregarded" in reviewing Rule 12(b)(6) dismissal). In any event, the complaint, with or without these "facts," fails to state a claim for relief.

"Boston mayor exerts direct control over the entire BRA." (Docket Entry # 1, ¶ 12). In a second example, Mayor Menino threatened Bernard Margolis ("Margolis"), former president of the Boston Public Library, to remove him from his position even though Margolis "did not answer to" Mayor Menino. (Docket Entry # 1, ¶ 11). Mayor Menino also wanted Margolis to hire certain individuals. (Docket Entry # 1, ¶ 11).

In contrast to the City's position in the above cases, in *Lu v. Doe,* Civil Action No. 2001–0129E ("the *Doe* case"), the City took the different position that BPHC was " 'a separate legal entity from the City of Boston.' " (Docket Entry # 1, ¶ 9) (quoting the City's memorandum in support of a motion to dismiss). As a result, the court allowed the City's motion to dismiss. (Docket Entry # 1, ¶ 9). In the *Arnston* case, the City likewise maintained that the Trustees constituted "a private(!) Corporation separate from the City.' " (Docket Entry # 1, ¶ 13) (Docket Entry # 26, Ex. 3, p. 4). Again, the court allowed the City's motion to dismiss.[8] (Docket Entry

# 1, ¶ 13) (Docket Entry # 26, Ex. 4). Hence, the complaint sets out one or more court cases and administrative proceedings in which the City adopted the position that an agency was a city agency to prevail on motions to dismiss or to avoid disqualifications of the City's representation of the agency. The complaint then points to the City's contrary position in other court cases that an agency was not a City agency or constituted a private corporation.

The *Arnston* case involved a suit brought by 16 taxpayers against the Trustees seeking to enforce the terms of three gifts to the Boston Public Library. (Docket Entry # 26, Ex. 4).[9] In "a companion case," *Trustees of the Boston Public Library, City of Boston v. Martha Coakley, as She is the Attorney General of the Commonwealth of Massachusetts,* Civil Action No. 09–3420–D, the parties entered into an agreed judgment in late August 2010.[10] (Docket Entry # 26, Ex. 4). Under the terms of the agreed judgment, the court ratified the Trustees' decision to

---

8. Plaintiff's memorandum in support of the second motion for partial summary judgment describes the City's motion to dismiss in the *Arnston* case as "fraud per se" and that the "Court's allowance of the motion functions as judicial estoppel to this case." (Docket Entry # 20). According to plaintiff, the *Arnston* case "anchors Lu's complaint." (Docket Entry # 20). Plaintiff maintains that judicial estoppel and equitable estoppel foreclose any argument by the City that the Trustees is not a separate legal entity from the City. (Docket Entry ## 20, 23). Plaintiff therefore reasons that all of the "agency defendants" (BSC, BHA, BRA, BPHC and the Trustees) are separate entities from the City "for the purpose of this lawsuit." (Docket Entry # 23, p. 2).

9. Because the complaint refers to the *Arnston* decision (Docket Entry # 1, ¶ 13), it is appropriate to include the page of the court's decision plaintiff attaches to a separate motion (Docket Entry # 26, Ex. 4) as part of the Rule 12(b)(6) record.

10. This court takes judicial notice of the agreed judgment that plaintiff attaches to a motion to compel. (Docket Entry # 22, Ex. 2, p. 11); *see Bluetarp Financial, Inc. v. Matrix Const. Co., Inc.,* 709 F.3d 72, 78 n. 4 (1st Cir.2013) (taking "judicial notice that neither the South Carolina state-court case or the Maine state-court case has gone to final judgment"); *Ezra Charitable Trust v. Tyco Intern., Ltd.,* 466 F.3d 1, 9 n. 7 (1st Cir.2006) (allowing motion "to take judicial notice of the SEC's 2006 complaint against Tyco" filed in district court, "the subsequent consent decree, and the final judgment"). It is also appropriate to consider matters of public record, which encompasses documents from prior state court adjudications, in resolving a motion to dismiss. *See Newman v. Krintzman,* 723 F.3d 308, 309 (1st Cir.2013) (quoting *Giragosian v. Ryan,* 547 F.3d 59, 66 (1st Cir.2008), in parenthetical).

close the Kirstein Building located at 20 City Hall Avenue in Boston and relocate the collection housed in the building to the Kirstein Business Library located in the Boston Public Library's central library in Copley Square. The court also permitted the Trustees to sell the Kirstein Building to the City and use the proceeds for charitable purposes in accordance with a stipulation between the Trustees and the City. (Docket Entry # 26, Ex. 4) (Docket Entry # 22, Ex. 2, pp. 11–13).

By letter dated August 29, 2011, and signed by Mayor Menino, he asked the Boston City Council to accept the Trustees' gift of the Kirstein Building. The letter attached an order signed by Sinnott, Corporation Counsel for the City, authorizing the City to accept the gift. (Docket Entry # 1, ¶ 14(b)) (Docket Entry # 22, Ex. 2, pp. 8–9).[11] The order explained that the Trustees had determined that it no longer needed the building and had voted to donate it to the City. On December 8, 2011, the Chair of the Committee on Economic Development and Planning of the Boston City Council wrote to Boston City Council members and recommended that the City accept the Trustees' gift of the Kirstein Building to the City. (Docket Entry # 1, ¶ 14(b)) (Docket Entry # 22, p. 10). "[B]etween June 21, 2012 and Oct. 18, 2013," the "City, through wire, removed" the December 8, 2011 letter "from its website" in order "to divert attention away from Menino." (Docket Entry # 1, ¶ 14(b)).

In a case originally filed in Massachusetts Superior Court (Suffolk County), *Fromm v. Boston Redevelopment Authority*, Civil Action No. 03–11316–MLW, the City removed the action to the United States District Court for the District of Massachusetts. (Docket Entry # 1, ¶ 10). The original complaint named various defendants including BRA. According to the complaint in *Fromm*, "had BRA argued it was a City agency, objected or sat on it, the removal would have been foiled." (Docket Entry # 1, ¶ 10).

Finally, in the *Hulme* case, the two attorneys for the Trustees and defendant George Hulme did not disclose the *Balalis* case to plaintiff. (Docket Entry # 1, ¶ 14). One of the attorneys filed a motion without consulting plaintiff and did not serve plaintiff with a copy of the motion. (Docket Entry # 1, ¶ 14). Defendant Eugene L. O'Flaherty manages both of these two attorneys. (Docket Entry # 1, ¶ 14)

## DISCUSSION

### A. *RICO Counts*

In addition to other arguments such as standing, the City defendants move to dismiss the RICO claims because of the absence of any facts demonstrating a "pattern" of "racketeering activity." (Docket Entry # 18). Similarly, BHA seeks to dismiss the RICO claims due to the absence of facts showing that BHA "committed any of the 'predicate acts' necessary to establish" a RICO violation. (Docket Entry # 32).

Plaintiff submits that the complaint satisfies the pleading standard because it is "more than enough for racketeering." (Docket Entry # 28) (citing *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 255–256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). Plaintiff's third sum-

---

**11.** The complaint refers to the "pdf file" with the signatures of Mayor Menino and Sinnott. (Docket Entry # 14(b)). Another filing by plaintiff (Docket Entry # 22, Ex. 2, pp. 6–7) demonstrates that the "pdf file" with "Menino's and Sinnott's signatures" referenced in the complaint (Docket Entry # 1, ¶ 14(b)) consists of the above described letter and attached order. *See generally Freeman v. Town of Hudson*, 714 F.3d at 36.

mary judgment motion asserts that Mayor Walsh committed extortion under the Hobbs Act by terminating the employment of the 16 BRA employees in March 2014. The complaint also identifies Mayor Menino's "threats of removal" to Margolis and the terminations of BRA employees as Hobbs Act violations. (Docket Entry # 1, ¶¶ 11, 16). In addition, the City removed the December 8, 2011 letter from its website "through wire." (Docket Entry # 1, ¶ 14).

Counts one, two and three respectively allege violations of section 1962(b), section 1962(c) and section 1962(d). All three subsections require a plaintiff to show that the defendant engaged in a "pattern of racketeering activity." 18 U.S.C. § 1962(b), (c), (d); *see MyFreeMedicine.com, LLC v. Alpine Investors,* 739 F.Supp.2d 8, 18–19 (D.Me.2010) (RICO liability requires defendant to "engage in a 'pattern of racketeering activity'") (citing sections 1962(a), (b), (c), (d)); *accord Crawford v. Franklin Credit Management Corp.,* 758 F.3d 473, 489 (2nd Cir.2014) (allowing summary judgment on section 1962(d) claim because no showing that defendant engaged "in conduct of the type that would be sufficient to constitute a pattern of racketeering activity"). The pattern element of a civil RICO claim "requires a plaintiff to show at least two predicate acts of 'racketeering activity.'" *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.,* 329 F.3d 216, 233 (1st Cir. 2003) (quoting *Efron v. Embassy Suites (P.R.) Inc.,* 223 F.3d 12, 15 (1st Cir.2000)); *Mendez Internet Management Services, Inc. v. Banco Santander de Puerto Rico,* 621 F.3d 10, 14 (1st Cir.2010) ("cardinal requirement of civil RICO liability is" commission, attempt or conspiracy to commit "defined predicate acts" in order "to establish 'a pattern of racketeering activity'"). As to predicate acts, the statute defines "racketeering activity" as "any act 'chargeable' under several generically described state criminal laws" or "any act 'indictable' under numerous specific federal criminal provisions." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 481–482, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (citing 18 U.S.C. § 1961(1)).

The complaint alleges predicate acts in two of the defined categories, extortion under the Hobbs Act, 18 U.S.C. § 1951, and wire fraud, 18 U.S.C. § 1343. The Hobbs Act defines "extortion as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" *Scheidler v. National Organization for Women, Inc.,* 537 U.S. 393, 400, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003) (quoting 18 U.S.C. § 1951(b)(2)). Because "[o]btaining property requires 'not only the deprivation but also the acquisition of property,'" the property at issue must "be transferable— that is, capable of passing from one person to another." *Sekhar v. U.S.,* — U.S. —, 133 S.Ct. 2720, 2725, 186 L.Ed.2d 794 (2013) (quoting *Scheidler v. National Organization for Women, Inc.,* 537 U.S. at 404, 123 S.Ct. 1057).

Wire fraud requires "a 'scheme to defraud,'" a "'knowing and willful participation in the scheme with the intent to defraud,' and the use of interstate or foreign 'wire communications' to further that scheme." *U.S. v. DiRosa,* 761 F.3d 144, 151 (1st Cir.2014). The predicate act of wire fraud "cover[s] only material falsehood, which has 'a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Mendez Internet Management Services, Inc. v. Banco Santander de Puerto Rico,* 621 F.3d at 15 (quoting *United States v. Moran,* 393 F.3d 1, 13 (1st Cir.2004)) (emphasis omitted).

First party reliance, however, is not required. *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008); *Mendez Internet Management Services, Inc. v. Banco Santander de Puerto Rico*, 621 F.3d at 15 n. 5.

■■■ Here, examining the changes in legal positions which plaintiff depicts in the complaint, the Trustees in the *Balalis* case presented an argument that it was part of the City but in the *Arnston* case presented an argument that it was a private corporation. These positions are not necessarily contradictory let alone material falsehoods that would support wire fraud. "[T]he Library is a department of the City of Boston, at least for some purposes," and a separate corporate entity for other purposes. *Lu v. Hulme*, 2013 WL 1331028, at *3 (D.Mass. March 30, 2013). Thus, the City's law department has the authority to represent the Trustees in legal proceedings. *See id.* Conversely, the Trustees is a corporate entity with the authority separate from the City to hold property and to sue to recover library funds. *See City of Boston v. Dolan*, 298 Mass. 346, 10 N.E.2d 275, 279–280 (1937); *Lu v. Hulme*, 2013 WL 1331028, at *3. Consequently, it is neither a fraud on the court[12] nor a "predicate act" for the Trustees to argue in one case or in eight administrative proceedings that they are a department of the City and in another case that they are a private corporation. Similarly, the City's argument in the *Doe* case that BPHC " 'is a separate legal entity from the City' " (Docket Entry # 1, ¶ 9) is well founded as opposed to fraudulent. *See generally Daveiga v. BPHC*, 449 Mass. 434, 869 N.E.2d 586, 590–591 (2007) (discussing BPHC as entity separate from city for purposes of presentment under state tort claims act). Hence, the *Doe* court's February 2001 notice of the decision to allow the motion to dismiss transmitted "through U.S. mail" (Docket Entry # 1, ¶ 9) was not done in furtherance of a scheme or artifice to defraud within the meaning of the mail fraud statute, 18 U.S.C. § 1341. *See generally U.S. v. LaPlante*, 714 F.3d 641, 644–646 (1st Cir.2013). Furthermore, the City's argument that BPHC is a separate legal entity from the City does not support a finding that any of the City defendants or BPHC used wire communications, including filing court documents, to further a scheme to defraud. As to extortion, "numerous courts of appeals" conclude "that 'the filing of meritless litigation, or even malicious prosecution, is not a predicate RICO act.' " *Kerik v. Tacopina*, 64 F.Supp.3d 542, 562, 2014 WL 6791615, *13 (S.D.N.Y. Dec. 3, 2014).

■■ The complaint also disparages Mayor Menino's conduct of seeking to expand his authority and make "fiefdoms" of state or government agencies. It is true that Mayor Menino supported the Trustees' donation of the Kirstein Building to the City. The donation, however, was fully litigated. The transfer of the property was not a fraud. Moreover, Mayor Menino's support was documented and disclosed in *both* the pdf file that the City

---

12. The complaint states that, "Pulling a fast one" on the courts "is a hallmark of the City." (Docket Entry # 1, ¶ 7). Changing legal or factual positions in different cases, however, falls significantly short of committing a fraud on the court. A fraud on the court occurs when "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir.1989). Whereas committing perjury or fabricating evidence may constitute a fraud on the court, not fully or candidly presenting the facts is typically not a fraud on the court. *See Kravetz v. United States Trust Company*, 941 F.Supp. 1295, 1301–1302 (D.Mass.1996).

removed "through wire" from the City's website and the other pdf file with Mayor Menino's and Sinnott's signatures. The removal of the former file from the City's website was not made to further any scheme to defraud.

 As set out in the complaint, plaintiff submits that Mayor Menino violated the Hobbs Act by making demands and threats of removal to Margolis. Mayor Menino also "wanted Margolis to hire specified people," presumably for positions at the Boston Public Library. (Docket Entry # 1, ¶ 11). Such conduct, however, falls short of extortion. "The Trustees are appointed by the Mayor."[13] *Lu v. Hulme,* 2013 WL 1331028, at *3. Using "legitimate economic threats to obtain property is wrongful only if the defendant has no claim of right to that property." *United States v. Sturm,* 870 F.2d 769, 773 (1st Cir.1989); *see Sanchez v. Triple–S Management, Corp.,* 492 F.3d 1, 12 (1st Cir. 2007) ("because 'there is nothing inherently wrongful about the use of economic fear to obtain property,' as opposed to" using force or violence, "economic fear is wrongful under the Hobbs Act only if the plaintiff had a pre-existing statutory right to be free from the defendant's demand' for the property").

 As to obtaining property "under color of official right," the plaintiff must "show that a public official has obtained [property] to which he was not entitled, knowing that the [property] was made in return for official acts." *U.S. v. Rivera Rangel,* 396 F.3d 476, 484 (1st Cir.2005) (quoting *Evans v. United States,* 504 U.S. 255, 268, 112 S.Ct. 1881, 119 L.Ed.2d 57

(1992)). Mayor Menino's ability and authority to appoint the Trustees precludes a "color of official right" extortion claim. In addition, accepting that at will employment constitutes property within the meaning of the Hobbs Act, the conduct, at best, amounts to coercion as opposed to extortion. *See Scheidler v. National Organization for Women, Inc.,* 537 U.S. at 405–406, 123 S.Ct. 1057 (RICO action distinguishing between coercion, which "involves the use of force or threat of force to restrict another's freedom of action," and extortion). Finally, a government official acting to obtain property for the sole benefit of the government, rather than for his own benefit or advantage, does not commit extortion. *Wilkie v. Robbins,* 551 U.S. 537, 565, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007); *see U.S. v. Peterson,* 544 F.Supp.2d 1363, 1370–1371 (M.D.Ga.2008). Here, the conduct does not reasonably infer that Mayor Menino acted for his own personal as opposed to governmental gain.

 The complaint next asserts that Mayor Walsh "eliminated a BRA division and fired sixteen (16) BRA employees" without authority "in violation of the Hobbs Act." (Docket Entry # 1, ¶ 16). The predicate act of extortion requires obtaining property of another *"with* his consent." 18 U.S.C. § 1951(b)(2) (emphasis added). Further, as noted above, extortion under color of official right requires the prosecution to show "that the defendant, a public official, has received an emolument that he was not entitled to receive, with knowledge that the emolument was tendered in exchange for some official act.'" *U.S. v. Turner,* 684 F.3d

---

**13.** The assertions in the complaint that Margolis "does not answer to" the Mayor or that Mayor Walsh acted "without authority" amount to legal conclusions couched as fact. *See Lemelson v. U.S. Bank National Association,* 721 F.3d 18, 21 (1st Cir.2013) (reviewing

court's Rule 12(b)(6) dismissal and disregarding " 'statements in the complaint that merely offer "legal conclusions couched as fact" ' ") (quoting *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011), and omitting internal brackets and ellipses).

244, 255 (1st Cir.2012) (quoting *United States v. Cruz–Arroyo,* 461 F.3d 69, 73 (1st Cir.2006)); *U.S. v. Rivera Rangel,* 396 F.3d at 484. The complaint, however, fails to set out any facts that Mayor Walsh obtained property (the 16 BRA jobs) he was not entitled to receive with the knowledge that it was tendered in exchange for some official act. Separately, there is no indication that Mayor Walsh used any "actual or threatened force, violence or fear." 18 U.S.C. § 1951(b)(2).

In sum, due to the absence of facts or reasonable inferences drawn therefrom to support the existence of any predicate act of extortion or wire fraud, as argued by the City defendants and BHA, they are not liable under RICO. Counts one, two and three against the City defendants and BHA are therefore subject to dismissal.[14]

The City defendants also correctly maintain that, at least in the context of Mayor Walsh's conduct in eliminating a BRA division and firing 16 BRA employees, that plaintiff has not suffered an injury, even accepting the premise that plaintiff's litigation costs constitute viable injuries. *See Sanchez v. Triple–S Management, Corp.,* 492 F.3d at 14 ("plaintiffs cannot press a RICO claim based on attempts at extortion that did not succeed in harming them"); *accord In re Neurontin Marketing and Sales Practices Litigation,* 712 F.3d 21, 34–40 (1st Cir.2013) (discussing but for and proximate causation).

BPHC argues that the RICO claims fail to set out any facts to support a cause of action. It notes that the complaint "does not allege that the plaintiff has had any contact with or has received any services from the Commission." (Docket Entry # 16–1). BPHC also submits that it is a separate legal entity distinct from the City. (Docket Entry # 16–1) (citing *Davei-*

ga *v. Boston Public Health Com'n,* 869 N.E.2d at 590 ("Legislature has made the commission an entity that is legally distinct from the city of Boston")).

Plaintiff relies on equitable estoppel to avoid dismissal and cites to the portion of *Daveiga* that addressed the doctrine. *See Daveiga v. Boston Public Health Com'n,* 869 N.E.2d at 591. The traditional elements of equitable estoppel require: "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Bongaards v. Millen,* 440 Mass. 10, 793 N.E.2d 335, 339 (2003); *see Licata v. GGNSC Malden Dexter LLC,* 466 Mass. 793, 2 N.E.3d 840, 848 (2014). The complaint fails to identify a representation made by BPHC to plaintiff or that plaintiff acted in reliance on the representation to his detriment.

In response to BPHC's argument that the complaint does not refer to BPHC, plaintiff asserts that he identified BPHC in paragraphs four, six and nine. (Docket Entry # 25). Paragraph four refers to "moving goal posts." (Docket Entry # 1, ¶ 4). Paragraph nine involves the *Doe* case. (Docket Entry # 1, ¶ 9). In *Doe,* the City argued that BPHC was " 'a separate legal entity from the City of Boston' " and thereby prevailed on a motion to dismiss. (Docket Entry # 1, ¶ 9). As indicated above, the statement was not a material falsehood sufficient to support wire fraud. Plaintiff also relies on judicial estoppel. Even assuming dubitánte that judicial estoppel applied to prevent BPHC from arguing it is not a separate legal entity from the City in this case, *see gener-*

---

**14.** It is therefore not necessary to address BHA's and the City defendants' alternative arguments to dismiss counts one through three.

*ally Perry v. Blum,* 629 F.3d 1, 8 (1st Cir.2010), the doctrine does not assist plaintiff. As discussed above, the complaint fails to state a RICO claim against the City defendants. Accordingly, BPHC's synonymous identity with the City or the City defendants *supports* dismissing the RICO claims.

Paragraph six notes that the City's website and budget describe government or state agencies using the word "Boston" thereby depicting them "as City agencies." (Docket Entry # 1, ¶ 6). The City as well as these " 'Boston' agencies" then evade legal challenges by "draw[ing]" lines to defeat "legal challenges against them." (Docket Entry # 1, ¶ 6). For reasons already discussed, any shift in legal position by BPHC was not a material falsehood to support the predicate act of wire fraud. There is also no factual allegation that BPHC obtained property with consent by using "force, violence, or fear or color of official right." 18 U.S.C. § 1951.

Otherwise, there are no facts indicating that plaintiff had any contact with BPHC. The allegations in paragraphs 18, 19 and 20 that "[a]ll defendants" were associated with an enterprise, engaged in a "pattern of racketeering activity" or "conspired" to violate sections 1962(a), (b) or (c) constitute no more than legal conclusions. *See Lemelson v. U.S. Bank National Association,* 721 F.3d at 21 (reviewing court's Rule 12(b)(6) dismissal and disregarding " 'statements in the complaint that merely offer "legal conclusions couched as fact" or "threadbare recitals of the elements of a cause of action" ' ") (quoting *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d at 12, and omitting internal brackets and ellips-

es). The RICO claims against BPHC in counts one, two and three are therefore subject to dismissal.

### B. *Fraud Count*

The City defendants and BPHC move to dismiss Count Four given the absence of facts to support fraud.[15] Plaintiff relies on the same arguments presented above in connection with the RICO claims. He adds that the positions taken by the City's law department in the *Balalis* and *Dunn* cases, as stated in paragraphs seven and 12(a) of the complaint, "are frauds as a matter of law." (Docket Entry # 20). Plaintiff further emphasizes that the *Arnston* case "anchors" the complaint and that the City's motion to dismiss in *Arnston* "is fraud per se." (Docket Entry # 20).

■■■ In order to establish "fraud under Massachusetts law, a plaintiff must show that 'the defendant "made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." ' " *Taylor v. Am. Chemistry Council,* 576 F.3d 16, 31 (1st Cir.2009) (quoting *Russell v. Cooley Dickinson Hospital, Inc.,* 437 Mass. 443, 772 N.E.2d 1054, 1066 (2002)); *accord Masingill v. EMC Corp.,* 449 Mass. 532, 870 N.E.2d 81, 88 (2007) (setting out same elements and noting that "reliance by the plaintiff must be reasonable"). "In Massachusetts, a person is generally liable in common-law fraud only for fraudulent representations for which he himself is responsible." *Taylor*

---

15. Unlike the City defendants and BPHC, BHA tailors its arguments exclusively to the RICO claims. The motion as well as the memorandum expressly reference only counts one, two and three. The argument that the complaint fails to plead fraud with particularity pertains solely to the RICO counts. Nowhere does BHA refer to Count Four or the common law fraud claim. BHA thus fails to present an argument relative to Count Four which therefore remains in this action as filed against BHA at this time.

*v. American Chemistry Council,* 576 F.3d at 32.

▉ BPHC submits that the allegations in the complaint are not directed against BPHC. Indeed, the *Doe* case is the only connection between BPHC and plaintiff outlined in the complaint. (Docket Entry # 1, ¶ 6). Any reliance on statements made by an adversary in litigation in the *Doe* case is not reasonable. Moreover, legal arguments are not facts. Alternatively, even assuming that the statement by the City in the *Doe* case that BPHC "is a separate legal entity from the City of Boston," the statement is not false. *See Daveiga v. Boston Public Health Com'n,* 869 N.E.2d at 591; *see also Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 132 (1st Cir.2006) (to succeed in a claim for misrepresentation, "plaintiffs must demonstrate that the Domestic Defendants (1) made false statements of material fact").

The complaint additionally states that the "City's words (including its website and budget) and deeds" represent agencies "as City agencies" by including the word "Boston" in describing them. (Docket Entry # 1, ¶ 6). There is no indication, however, that BPHC made any of these representations. BPHC was not a party in the *Dunn, Balalis* or *Arnston* cases. Because the complaint is devoid of any false representation of fact made by BPHC itself or in an agency capacity to plaintiff or that plaintiff reasonably relied on any such representation, the fraud claim against BPHC is subject to dismissal.

▉ The City defendants submit that the complaint fails to include "a single factual allegation to the effect that any of the City Defendants personally made any promises or statements at all that induced

plaintiff's reliance." (Docket Entry # 9). The legal arguments made by the City and set out in the complaint in the *Balalis, Doe, Fromm, Dunn* and *Arnston* cases are not misrepresentations of fact. Any statements of fact made by the City in the *Arnston, Balalis, Wyatt, Dunn* or *Fromm* cases were not made to plaintiff because he was not a party in these cases. There is also no indication that plaintiff's reliance, if any, on the argument Driscoll made in the *Hulme* case that the Trustees was a City agency was reasonable. Mayor Menino's statements or "threats" to Margolis were not made to plaintiff.

▉ The *Hulme* case involved a civil rights action against the Trustees for denying plaintiff entrance to the Boston Public Library on one occasion.[16] There is no indication that Balalis was a percipient witness to the events in the *Hulme* case. Consequently, the omission of Balalis from a list of percipient witnesses in the *Hulme* case (Docket Entry # 1, ¶ 14) was not a misrepresentation. Alternatively, the complaint fails to reasonably infer that plaintiff acted on any such omission to his damage because there are no facts indicating that Balalis had information relevant to the *Hulme* case. The complaint in this action also states that, on May 15, 2014, defendant David "Waterall electronically filed" an opposition to plaintiff's motion to compel in the *Hulme* case without consulting with plaintiff or serving him with a copy of the filing. (Docket Entry # 1, ¶ 14). Taking judicial notice that plaintiff promptly notified the *Hulme* court five days later about the failure, there is no indication that he relied on any statement in the opposition that it had been served on plaintiff or acted upon the statement to his damage.

---

**16.** The complaint discusses the *Hulme* case at length. This court takes judicial notice of the above allegation which is taken from the verified complaint filed by the City defendants. (Docket Entry # 11–4).

Paragraph six in the complaint states that "the City's words" or deeds use "Boston" to describe government or state agencies. (Docket Entry # 1, ¶ 6). There is, however, no indication or inference that plaintiff relied on any such statement and acted upon it to his detriment or damage. Rather, the same paragraph states that plaintiff "cried foul" a year and half before filing the complaint. (Docket Entry # 1, ¶ 6).

In short, the complaint fails to set forth facts that demonstrate a plausible claim of fraud against the City defendants. Accordingly, the claim is subject to Rule 12(b)(6) dismissal.

## II. *Plaintiff's Summary Judgment Motions*

Plaintiff filed three partial motions for summary judgment. (Docket Entry ## 19, 23, 37). The City defendants and BPHC filed oppositions to the first and second partial summary judgment motions reiterating and elaborating upon their arguments filed in support of their motions to dismiss. (Docket Entry ## 31, 35). Both defendants maintain that plaintiff fails to provide evidence of a "pattern" of "racketeering activity" as to the RICO claims and fails to provide evidence of common law fraud. (Docket Entry ## 31, 35).

In moving for summary judgment, plaintiff does not provide affidavits based on personal knowledge, depositions or a L.R. 56.1 statement of undisputed facts. He does, however, rely on a number of documents including those depicting Mayor Menino's conduct in supporting the transfer of the Kirstein Building to the City.[17] Plaintiff also cites and discusses the cases in the complaint, including *Balalis, Dunn, Arnston* and *Doe,* as a basis to apply equitable or judicial estoppel. In addition, he cites a number of other cases for the premise that the Trustees and other government agencies are independent corporate bodies as opposed to agencies of the City. Plaintiff additionally quotes the aforementioned financial report of the City for the fiscal year ending June 30, 2011, which depicts BPHC, BRA, the Economic Development Industrial Corporation and the Trustees as component units. He also cites to the City's budget (Docket Entry # 23, p. 3) presumably to support the assertion in the complaint that the City and its law department move "goal posts" or draw arbitrary lines when confronted with litigation (Docket Entry # 1, ¶¶ 3, 4).

Plaintiff further submits a business card that he found "on the floor of [the] MBTA Back Bay station." (Docket Entry # (Docket Entry # 20, pp. 4–5) (Docket Entry # 26, p. 16)). The business card lists the name of a Career Specialist in the "Mayor's Office of Jobs and Community Services[,] a division of the Boston Redevelopment Authority." (Docket Entry # 20, pp. 4–5) (Docket Entry # 26, p. 16). Plaintiff offers the business card as evidence of fraud and in support of the allegation in the complaint that the "Boston [M]ayor exerts direct control over the entire BRA." (Docket Entry # 20, p. 3) (Docket Entry # 1, ¶ 12(c)).

### STANDARD OF REVIEW

Summary judgment is designed " 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " *Tobin v. Federal Express Corp.,* 775 F.3d 448, 450 (1st Cir.2014) (quoting *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992)). As the mov-

---

17. In addressing the summary judgment motions, this court has considered all of the documents attached to various filings in the record.

ing party seeking summary judgment, plaintiff " 'bears the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.' " *Rosciti v. Insurance Co. of Pennsylvania,* 659 F.3d 92, 96 (1st Cir.2011) (quoting *Carmona v. Toledo,* 215 F.3d 124, 132 (1st Cir.2000)); Fed.R.Civ.P. 56(a) (summary judgment appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment·as a matter of law"). Here, plaintiff also bears the underlying burden of proof at trial. *See Scottsdale Insurance Co. v. Torres,* 561 F.3d 74, 77 (1st Cir.2009) ("party with the burden of proof must provide evidence sufficient for the court to hold that no reasonable fact-finder could find other than in its favor"); *see generally Perez v. Lorraine Enterprises, Inc.,* 769 F.3d 23, 30 (1st Cir. 2014) (at "summary judgment stage, the absence of evidence on an issue redounds to the detriment of the party who bears the burden of proof on that issue"). Summary judgment is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." *Pierce v. Cotuit Fire District,* 741 F.3d 295, 301 (1st Cir.2014); *see also Ruiz–Rosa v. Rullan,* 485 F.3d 150, 155 (1st Cir.2007) (applying same legal standard applied by district court when reviewing summary judgment ruling).

"Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.' " *Green Mountain Realty Corp. v. Leonard,* 750 F.3d 30, 38 (1st Cir.2014)

(quoting *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011)). The evidence is viewed "in the light most favorable to the non-moving party" and "all reasonable inferences" are drawn in the non-movant's favor. *Ahmed v. Johnson,* 752 F.3d 490, 495 (1st Cir.2014).

In reviewing a summary judgment motion, a court may examine "all of the record materials on file," *Geshke v. Crocs, Inc.,* 740 F.3d 74, 77 (1st Cir.2014), "including depositions, documents, electronically stored information, affidavits or declarations ... or other material." Fed. R.Civ.P. 56(c)(1); *see Ahmed v. Johnson,* 752 F.3d at 495. "Unsupported allegations and speculation," however, "do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to defeat summary judgment." *Rivera–Colon v. Mills,* 635 F.3d 9, 12 (1st Cir.2011); *see Serra v. Quantum Servicing, Corp.,* 747 F.3d 37, 40 (1st Cir.2014) ("allegations of a merely speculative or conclusory nature are rightly disregarded"). Likewise, as explained in a recent First Circuit case, albeit in the context of addressing a nonmovant's burden, it is inappropriate for a plaintiff to rely on allegations in an unverified complaint.[18] *See Bellone v. Southwick–Tolland Regional School District,* 748 F.3d 418, 424 (1st Cir.2014) (" 'nonmovant may not rest upon mere allegations in, say, an unverified complaint' "); *Geshke v. Crocs, Inc.,* 740 F.3d at 78 n. 3 ("unverified allegations in a complaint are not evidence").

*DISCUSSION*

Addressing the partial summary judgment motions seriatim, the first motion

---

18. " '[A]dmissions in the pleadings,' " however, " 'are binding on the parties and may support summary judgment against the party making such admissions.' " *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,*

976 F.2d 58, 61 (1st Cir.1992) (quoting *Missouri Housing Development Commission v. Brice,* 919 F.2d 1306, 1315 (8th Cir.1990), in parenthetical).

argues that the "agency defendants are not part and parcel, or a constituent division, of [the] City of Boston." (Docket Entry # 23). Plaintiff points out that Massachusetts statutes refer to the Trustees as "'a body corporate'" and to BPHC, BHA and BRA as a "'body politic and corporate.'" (Docket Entry # 23). He submits that, "Fraud and racketeering activity aside, for the purpose of this lawsuit judicial estoppel dictates [that] the agency defendants are separate legal entities from [the] City." (Docket Entry # 23). Plaintiff quotes the City's financial report which describes BPHC, BRA, the Economic Development Industrial Corporation and the Trustees as "component units." (Docket Entry # 23). The motion additionally incorporates plaintiff's opposition to a motion for a protective order as evidencing Mayor Menino's "conscious guilt." (Docket Entry # 23). The opposition attaches the previously described documents regarding the City's acquisition of the Kirstein Building and Mayor Menino's involvement in the acquisition. (Docket Entry # 22).

BPHC and the City defendants oppose summary judgment on the basis that plaintiff fails to provide sufficient, if any, evidence of a "pattern" of "racketeering activity" or common law fraud. For reasons explained in allowing their motions to dismiss, they are correct. Plaintiff's arguments regarding judicial and equitable estoppel do not establish as a matter of law that any defendant committed a predicate act of wire fraud, mail fraud or extortion. Lacking the factual support to establish this element of a RICO claim in his favor, plaintiff is not entitled to summary judgment on the RICO claims in counts one, two and three.

As argued by BPHC, plaintiff fails to provide any evidence that it engaged in common law fraud. For reasons explained

in Roman numeral I, the record on summary judgment does not provide factual evidence that BPHC itself or in any agency capacity made a false representation to plaintiff or that plaintiff reasonably relied on any such representation. Incorporating its memorandum in support of the motion to dismiss, the City defendants aptly maintain there is no evidence that any City defendant made a false promise or statement that induced plaintiff's reliance. (Docket Entry # 31, n. 1) (Docket Entry # 9). Because there is insufficient factual evidence to establish as a matter of law that any defendant made a false representation of material fact to induce plaintiff to act on it or that plaintiff reasonably relied upon the representation, summary judgment in plaintiff's favor is not warranted and the first summary judgment is devoid of merit.

In the second summary judgment motion, plaintiff again asserts that the City's website refers to the Trustees as a "'department.'" (Docket Entry # 20). Plaintiff also argues that the *Balalis* and *Dunn* cases are "frauds as a matter of law." (Docket Entry # 20). He submits that the City's motion to dismiss in the *Arnston* case was "fraud per se" and the court's allowance of the motion provides a basis to invoke judicial estoppel. Plaintiff contends that the City "engineered victories" in the eight administrative proceedings all of which decided that the Trustees was a department of the City. (Docket Entry # 20). Plaintiff also relies on the business card to establish the predicate act of extortion and/or fraud. In the third summary judgment motion, plaintiff argues, without providing factual evidence, that Mayor Walsh committed extortion by terminating the employment of the 16 BRA employees and eliminating a BRA division.

Here again and for reasons set out in Roman numeral I, the factual evidence in

the summary judgment record does not establish a "pattern" of "racketeering activity" or the elements of common law fraud. The business card, which plaintiff found in April 2014, does not establish that Mayor Walsh (or any other defendant) engaged in extortion. As previously explained, Mayor Walsh's conduct of terminating the employment of 16 BRA employees and eliminating a BRA division does not amount to extortion and plaintiff fails to provide factual evidence to establish the contrary as a matter of law. The estoppel arguments do not warrant summary judgment in plaintiff's favor on either the RICO claims or the fraud claim. For reasons explained above, it is neither a fraud nor a predicate act for the Trustees, BPHC or the City to adhere to different legal positions regarding the independent or dependent relationship between the City and these agencies.

In sum, plaintiff does not meet his burden on summary judgment to show that evidence in the summary judgment record, *see* Fed.R.Civ.P. 56(c)(1), as opposed to allegations in the unverified complaint, establishes there is no genuine dispute as to any material fact relative to one or more of the RICO claims or the fraud claim.

### III. *Motion for Sanctions and Injunctive Relief*

The City defendants move for monetary sanctions and an award of their reasonable attorneys' fees and costs because of plaintiff's violation of the March Order in *Lu v. Harvard School of Dental Medicine et al.*, Civil Action No. 00–11492–MLW ("the *Harvard* case"). They also request an injunction prohibiting plaintiff "from continuing to commence lawsuits for the con-

duct set forth in Plaintiff's Complaint" in this case. (Docket Entry # 11). Plaintiff opposes the motion. (Docket Entry # 21).

The March Order required plaintiff to "attach to any pleading, motion, complaint, or other document that [plaintiff] files in the United States District Court for the District of Massachusetts: (1) a copy of this Order, and (2) a certification, signed under the pains and penalties of perjury, that he has complied in good faith with this Order." (Docket Entry # 11–1, p. 17). In filing the complaint, plaintiff did not attach a copy of the March Order. The same day plaintiff filed the complaint, he filed an unsigned document indicating his belief that the March Order did not apply. (Docket Entry # 2). In opposing the motion for a protective order, plaintiff represents that he disclosed "everything" to the Clerk's Office at the time he filed the complaint. (Docket Entry # 22).

In January 2003, a court in this district ordered plaintiff to pay the sum of $500 as a sanction because he did not comply with the March Order as well as with a separate Order filed in that case.[19] (Docket Entry # 11–2). Plaintiff paid the $500 sanction in late January 2003. Plaintiff also failed to attach the March Order to a complaint he filed in *Lu v. Stephen Horgan et al.*, Civil Action No. 12–10326–WGY ("the *Horgan* case"). Instead, the two page complaint included a statement directed to the District Judge who issued the March Order informing him about the complaint in the *Horgan* case.

In the *Hulme* case, plaintiff did not attach a copy of the March Order to the complaint. When defendants George Hulme and the Trustees moved for sanctions, the court in *Hulme* denied the mo-

---

**19.** The case is styled *Lu v. Massachusetts Institute of Technology,* Civil Action No. 02– 11860–RCL ("the *MIT* case").

tion without prejudice on March 30, 2013. The court reasoned that plaintiff was "homeless and evidently indigent" and admonished plaintiff to obey any future order entered in that case. (Docket Entry # 18–2, p. 24).

## DISCUSSION

■■■ Turning to injunctive relief, 28 U.S.C. § 1651 provides that, "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law." 28 U.S.C. § 1651. The law is also "well established that it is proper and necessary for an injunction to issue barring a party . . . from filing and processing frivolous and vexatious lawsuits." *Gordon v. U.S. Dept. of Justice*, 558 F.2d 618, 618 (1st Cir.1977). When a "litigant has demonstrated a 'propensity to file repeated suits involving the same or similar claims' of a 'frivolous or vexatious nature,' a bar on further filings is appropriate." *Langadinos v. Board of Trustees of University of Massachusetts*, 2013 WL 5513796, at *6 (D.Mass. Sept. 30, 2013) (quoting *Castro v. United States*, 775 F.2d 399, 409 (1st Cir. 1985), *overruled on other grounds by Stevens v. Department of the Treasury*, 500 U.S. 1, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991)). " '[L]itigiousness alone,' " however, does not " 'support an injunction against a plaintiff.' " *Sires v. Gabriel*, 748 F.2d 49, 51 (1st Cir.1984). Any restrictions imposed by a court "must be tailored to the specific circumstances presented." *Cok v. Family Court of Rhode Island*, 985 F.2d 32, 34 (1st Cir.1993); *see Castro v. United States*, 775 F.2d at 410 (couching injunction in broad terms may "impermissibly infringe upon a litigator's right of access to the courts"). The decision to

issue an injunction is within the discretion of this court. *See Castro v. United States*, 775 F.2d at 408.

■■■ Although plaintiff has repeatedly filed lawsuits in this district and in other courts, he is proceeding pro se. He attempted to bring the March Order to the attention of the court in the past and evidently discussed the issue with the Clerk's Office at the time he filed this action. An injunction barring plaintiff from filing any action "relating to the issues set forth in [the] complaint" is not tailored to the misconduct. Furthermore, the doctrines of "res judicata and collateral estoppel are usually more than adequate to protect defendants against repetitious litigation." *Harrelson v. U.S.*, 613 F.2d 114, 116 (5th Cir.1980); *see also Aristud–Gonzalez v. Government Development Bank for Puerto Rico*, 501 F.3d 24, 27–28 (1st Cir.2007). Exercising this court's discretion, an injunction barring plaintiff from commencing lawsuits for the conduct set out in the complaint is not warranted.

■■■ As to imposing a monetary sanction, this court undeniably has the inherent power to "levy such a sanction 'upon finding that a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." ' " *In re Plaza–Martinez*, 747 F.3d 10, 13 (1st Cir.2014) (quoting *F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R.*, 563 F.3d 1, 6 (1st Cir. 2009)). " 'Because of their very potency, inherent powers must be exercised with restraint and discretion.' "[20] *U.S. v. Romero–Lopez*, 661 F.3d 106, 108 (1st Cir. 2011) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)) (omitting internal brackets).

---

**20.** Plaintiff did not violate a scheduling order to warrant sanctions under Fed.R.Civ.P. 16(f) or a discovery order to warrant sanctions under Fed.R.Civ.P. 37.

Although the issue is close, this court finds that plaintiff did not act in bad faith. He brought the March Order to the attention of the court in the *Horgan* case. He apparently discussed the matter with the Clerk's Office when he filed this action. Although certain arguments overlap, the allegations in the complaint are not identical and do not substantially duplicate the allegations in the complaint in the *Hulme* case, the *Harvard* case or the *MIT* case. Considering the totality of the circumstances and exercising this court's discretion, a monetary sanction is not warranted.

In the event plaintiff continues to violate the March Order by filing a complaint in this district without attaching the March Order and without complying with the certification requirement, he is advised that such conduct may result in a sanction, including a monetary sanction or a stricter bar to filing cases in this district.

### CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS** [21] that the City defendants' amended motion to dismiss (Docket Entry # 17) and BPHC's motion to dismiss (Docket Entry # 16) be **ALLOWED** and that the complaint be dismissed as to these defendants. This court also **RECOMMENDS** [22] that BHA's motion to dismiss (Docket Entry # 32) be **ALLOWED** and that counts one, two and three be dismissed as to BHA.[23] In addition, this court **RECOMMENDS** [24] that: (1) plaintiff's motions for summary judgment (Docket Entry ## 19, 23, 37) be **DENIED;** (2) the City defendants' motion for sanctions and injunctive relief be **DENIED;** and (3) the City defendants' first motion to dismiss (Docket Entry # 8) be **DENIED** as moot.

Filed March 2, 2015.

---

21. Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. *See* Fed.R.Civ.P. 72(b). Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.

22. *See* the previous footnote.

23. As explained in footnote 15, BHA did not move to dismiss Count Four and therefore remains a defendant in this action.

