# United States Court of Appeals
## For the First Circuit

No. 09-1874

MÉNDEZ INTERNET MANAGEMENT SERVICES, INC.; JAMES MÉNDEZ,

Plaintiffs, Appellants,

v.

BANCO SANTANDER DE PUERTO RICO; BANCO POPULAR DE PUERTO RICO;
DORAL BANK; RG PREMIER BANK OF PUERTO RICO; WESTERNBANK OF PUERTO
RICO; GILBERTO ARVELO; DOCTORSHOPER.COM, INC.,[*]

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

Before
Boudin, Selya and Gajarsa,[**]
Circuit Judges.

Nicolás Nogueras-Cartagena, Julio C. Alejandro-Serrano and
Office of Nicolás Nogueras-Cartagena on brief for appellants.
Eduardo A. Zayas-Marxuach, Alejandro J. Cepeda-Díaz, McConnell
Valdés LLC, Néstor J. Navas-D'Acosta, Navas & Rodríguez, P.S.C.,
Harold D. Vicente-Colón and Vicente & Cuebas on brief for appellees
Banco Popular de Puerto Rico, Inc., Banco Santander Puerto Rico,
and Doral Bank.

---

[*]By order of the court, Federal Deposit Insurance Corporation
was substituted for RG Premier Bank of Puerto Rico and Westernbank
of Puerto Rico.

[**]Of the Federal Circuit, sitting by designation.

     <u>Sonia B. Alfaro-de la Vega</u> and <u>Law Offices of Gilberto Oliver</u> on brief for appellee RG Premier Bank of Puerto Rico.

---

September 22, 2010

---

**BOUDIN**, <u>Circuit Judge</u>.  James Méndez and Méndez Internet Management Services, Inc. (collectively "Méndez") appeal from the dismissal of their claims against five banks[1] and against Gilberto Arvelo and his website doctorshoper.com, described as a consumer watchdog service (collectively "Arvelo").  Because the case was disposed of in the district court on a motion to dismiss, Fed. R. Civ. P. 12(b)(6), our review is <u>de novo</u>, and we accept the factual allegations of the operative amended complaint, <u>Rule</u> v. <u>Fort Dodge Animal Health, Inc.</u>, 607 F.3d 250, 251-52 (1st Cir. 2010).

Based in Puerto Rico, Méndez sells Iraqi dinars ("dinars"), the official Iraqi currency.  According to the complaint, between September 2007 and August 2008, a number of banks in Puerto Rico closed or refused to open accounts for Méndez. Most objected to serving money services businesses ("MSBs") or stated related administrative reasons, including "the sheer volume of transactions."  The banks, Méndez says, also

> have conditioned the opening and continuation of regular checking accounts, lines of credit, savings accounts and all other regular bank services . . . upon plaintiff not depositing or withdrawing from any such bank account or credit lines, United States of America currency or legal tender money derived from the sale of . . . dinars.

---

[1]The banks named as defendants were Banco Santander de Puerto Rico, Banco Popular de Puerto Rico, Doral Bank, RG Premier Bank of Puerto Rico, and Westernbank of Puerto Rico.  The Federal Deposit Insurance Corporation ("FDIC") has since substituted itself for RG Premier Bank and Westernbank.  FirstBank Puerto Rico is named in the complaint, but is not a defendant.

In the same time frame, Arvelo (according to the complaint) published critical comments and articles on his website and also made unspecified public statements about Méndez' sale of dinars in Puerto Rico, which Méndez claims have prompted closures of his accounts as well as government oversight of his business. Arvelo's postings apparently suggest that the dinars are counterfeit; that Méndez has been operating illegally; that the general sale of Iraqi dinars is illegal; and that "the sale of dinars [is] not a legitimate business accepted by banking institutions."

On October 2, 2008, Méndez brought suit in federal district court in Puerto Rico against the named banks and Arvelo, seeking $14 million plus treble damages. He alleged three federal causes of action based respectively on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (2006), the Sherman Act, 15 U.S.C. § 1 (2006), and the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1972(1)(E) (2006). The complaint also included claims of abuse of right and defamation under Puerto Rico law.

Banco Popular de Puerto Rico filed a motion to dismiss the federal causes of action for failure to state a claim, which was joined by the other defendants. The district court dismissed the three federal claims on the merits, and declined to exercise supplemental jurisdiction over the Puerto Rico claims, dismissing

-4-

them without prejudice. Méndez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico, Civil No. 08-2140, 2009 WL 1392189, at *6 (D.P.R. May 15, 2009).

Méndez now appeals from the dismissal of the RICO and BHCA claims; he ignores his Sherman Act claim, which is thus abandoned. Our review, as already noted, is de novo, and is informed by recent Supreme Court decisions that require in a complaint "more than labels and conclusions" and stress that "a formulaic recital of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (holding Twombly to apply to all civil actions).

To read through Méndez' complaint and opening brief (he filed no reply) and the answering briefs of the banks (Arvelo has remained silent) is to be left initially in a state of puzzlement. The banks do not deny that they have refused to provide Méndez with accounts for his dinar business, but do not trouble to explain why; Méndez alleges conspiracy, seemingly among the banks and clearly between Arvelo and the banks, also without explaining why the banks or Arvelo have any motive to cooperate or to undermine him.

Yet modest research among public documents provides some enlightening information about the phase of the case that involves the banks. It turns out that the USA PATRIOT Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (codified in scattered sections of the

U.S.C.), amended the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311-5330 (2006), in ways that imposed more stringent requirements aimed at money laundering.

One consequence has been several high-profile criminal cases brought against banks doing business with MSBs, including one of the bank defendants in the case before us.[2] Given these cases and general uncertainty about regulation under the amended BSA, many banks believe they could bear responsibility for the BSA compliance of MSB customers despite statements to the contrary from the Office of the Comptroller of the Currency. Bank Secrecy Act's Impact on Money Services Businesses: Hearing Before the Subcomm. on Fin. Insts. & Consumer Credit of the H. Comm. on Fin. Servs., 109th Cong. 20 (2006) (statements of Rep. Jeb Hensarling & Ann F. Jaedicke, Deputy Comptroller for Compliance Policy, Office of the Comptroller of the Currency).

Unsurprisingly banks have increasingly shunned risky entanglement with MSBs. At a House hearing in 2006 it was noted that "[o]ver the past year, at least three national banks have ceased offering services to MSB's, and some State-chartered

---

[2] In January 2003, Banco Popular "forfeited $21.6 million . . . and entered into a deferred prosecution agreement with the Justice Department in a case involving a single count of failing to file a SAR [suspicious activity report] on an MSB customer in violation of the BSA." An Update on Money Services Businesses Under Bank Secrecy and USA PATRIOT Regulation: Hearing Before the S. Comm. on Banking, Housing & Urban Affairs, 109th Cong. 47 (2005) (prepared statement of Julie L. Williams, Acting Comptroller of the Currency).

institutions have also discontinued service, and this is across-the-board blanket discontinuance by these institutions of all MSB's." Id. at 2 (statement of Rep. Spencer Bachus, Chairman, H. Subcomm. on Fin. Insts. & Consumer Credit). Similarly, a 2009 bill proposed congressional findings that, due to regulatory guidance and expectations of federal banking agencies and the Secretary of the Treasury,

> many insured depository institutions have refused or closed money services businesses' accounts in order either not to incur the burden, risk or potential liability for undertaking a de facto regulatory function, or else to avoid supervisory sanctions for not exercising such oversight.

H.R. 2893, 111th Cong. § 2(4) (2009).

The defendant banks now before us may have no incentive at the motion to dismiss stage to offer explanations that may raise factual issues unfit for resolution except upon summary judgment or trial. But, happily for them, they have no need to establish their own motives unless and until Méndez makes out a plausible federal claim under Twombly and Iqbal standards. This case bears out the wisdom of the Supreme Court's requirements in screening out rhetoric masquerading as litigation.

A cardinal requirement of civil RICO liability is the allegation of the commission, or attempt or conspiracy to commit, defined predicate acts needed to establish "a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C.

§ 1962(c). Acts in two defined predicate-act categories were alleged by Méndez: mail or wire fraud, 18 U.S.C. §§ 1341, 1343, and extortion, 18 U.S.C. § 1951. We begin with the allegations of fraud which, under applicable pleading rules, Fed. R. Civ. P. 9(b), must be alleged with particularity.

As to the banks, Méndez' complaint states that the "cancellations contained misrepresentations inasmuch as the banks knew that the plaintiff was not a money service business, and that, even if the plaintiff was, the banks had substantial regulatory guidance to effectively provide the services with no regulatory risk." So, his first theory is that the banks denied him the use of accounts for his dinar sales because they deemed him to be within the MSB category; this, he says, must be fraudulent because he "does not operate as one" since he does not provide the "myriad of services" associated with MSB operations.

But the very regulation he cites makes clear that to do any buying or selling of currency, exceeding $1,000 with any other person in one day, is enough for MSB status under the regulation.[3] Further, Méndez goes on in his own complaint to say that while he does not provide a full bevy of services listed in the regulation,

_____

[3]MSBs may engage in a range of money-related transactions--including trading of currency, check cashing, and transmission--but entities conducting only one type of transaction also can fall into the category; buyers or sellers of currency in a substantial amount are one type of MSB. 31 C.F.R. § 103.11(uu) (2009) (FDIC definition).

"regulations require that [his business] register because the business might qualify as such," that is, as an MSB. This is not an allegation of fraud but an affirmation of the truth of the supposed false statements.

On appeal, Méndez instead asserts the second theory, in which a different falsehood is being perpetrated, namely, that the banks say that they do not want to have accounts used to conduct MSB activities but their real reason for refusing to deal with Méndez is that they wish to drive him out of the dinar selling business in order to take it over for themselves. But there is no allegation that the banks supply dinars to anyone, that they have taken any steps to become such suppliers, or that they have expressed any interest in doing so.

In all events, the predicate fraud statutes cover only material falsehood, which has "a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." United States v. Moran, 393 F.3d 1, 13 (1st Cir. 2004) (quoting Neder v. United States, 527 U.S. 1, 16 (1999)). Even if the banks were implicitly misrepresenting their motive for not dealing with Méndez, it is not the falsity of their excuse that causes him damage but their refusal to provide him with accounts.

As to Arvelo, in fraud cases, the familiar pattern is a material deceitful statement or omission causing the victim to

undertake a transaction that inflicts economic loss on the defrauded party and ordinarily benefits the deceiving party.[4] There is no suggestion that Arvelo stands to gain financially by causing Méndez to fail. And there is no suggestion that anyone was swayed by Arvelo's statements: Méndez himself certainly was not beguiled by any lies told about him by Arvelo, nor does he claim that the banks were deceived, charging instead that they were conspirators with Arvelo.

Admittedly, "fraud" is a concept with indistinct boundaries. There may perhaps be situations in which a "scheme or artifice to defraud," 18 U.S.C. §§ 1341, 1343, can have some purpose other than the usual aim "to obtain . . . money or other property" by means of deceit, United States v. Kenrick, 221 F.3d 19, 26-27 (1st Cir. 2000) (discussing parallel language for bank fraud under 18 U.S.C. § 1344); and the federal statutes can reach beyond common-law fraud.[5] But merely alleging defamation--which is

---

[4]See, e.g., Restatement (Second) of Torts § 531 (1977) (one is liable for fraud to people "whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced").

[5]In particular, unlike common-law fraud, mail and wire fraud does not require first-party reliance, though "it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation." Bridge v. Phoenix Bond & Indem. Co., 128 S. Ct. 2131, 2144-45 (2008).

the gravamen of Méndez' charge against Arvelo--can <u>standing alone</u> hardly be enough to comprise fraud.

As for extortion--the other predicate alleged--it too fails on the face of the complaint.  Extortion, under the Hobbs Act, is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  There is no allegation in the complaint of actual extortion, as Méndez concedes; as for conspiracy or attempt, the complaint says only that the defendants "entered into a conspiracy to extort the plaintiff," a conclusory assertion inadequate under <u>Twombly</u>, 550 U.S. at 555.

In his appellate brief, Méndez now alleges that the defendants sought his business in selling dinars and argues that they "attempted to obtain such property . . . even if the property would not be used by them."  His explanation betrays a misunderstanding of "obtain"--disrupting or attempting to close a business is not an attempt to obtain that business, <u>Scheidler</u> v. <u>Nat'l Org. for Women, Inc.</u>, 537 U.S. 393, 404-05, 410 (2003)--and again there is no allegation in the complaint that any of the defendants in fact sell dinars or that they sought to supplant Méndez or acquire any of his customers.

Thus, lacking a proper allegation of either class of predicate acts, Méndez' RICO claim fails at the pleading stage.  In

addition, Méndez' claim is based upon a RICO enterprise, 18 U.S.C. § 1961(4), that he describes as a "conspiracy" and "joint effort" between the defendants. But there is no indication, apart from these empty epithets, to indicate that Arvelo's negative statements were made by or in cooperation with any of the banks; mere conclusory allegations are, again, not enough.

The complaint also fails to state a claim under the BHCA. The act provides in relevant part that a "bank shall not in any manner . . . furnish any service . . . on the condition or requirement . . . that the customer shall not obtain some other credit, property, or service from a competitor of such bank." 12 U.S.C. § 1972(1)(E). Seemingly, the charge is that the banks are refusing to give Méndez accounts in order to suppress competition between the banks and an unidentified entity or entities that supply Méndez with dinars to resell.

But yet again there is no allegation that banks supply dinars to anyone or that they have sought to replace the unnamed entities and become the suppliers of dinars to Méndez or anyone else. It would be a different matter if the complaint alleged that the banks had offered to give Méndez accounts so long as he bought his dinars from the banks rather than his current suppliers; but there is no allegation to this effect, let alone evidence that the banks want to become Méndez' suppliers of dinars. As such, Méndez

-12-

has not offered sufficient supporting facts to plead his BHCA claim.  As we have explained,

> the price of entry, even to discovery, is for the plaintiff to allege a <u>factual</u> predicate concrete enough to warrant further proceedings. . . . Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.

<u>DM Research, Inc.</u> v. <u>Coll. of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999).

The complaint does identify the content, although not the occasions of publication, of statements by Arvelo about Méndez' operations that--if false--might conceivably be defamatory. Because the district court declined to exercise supplemental jurisdiction, 28 U.S.C. § 1367(c)(3) (2006), the dismissal of the non-federal claims was without prejudice, which leaves Méndez free to pursue such local causes of action, if any he has.

This brings us finally to a tail-end issue occasioned by the fact that certain of the defendant banks are now in receivership and the FDIC succeeds to their interest and has intervened in the appeal.  Under the statutory scheme, 12 U.S.C. § 1821(d), the FDIC says that the plaintiffs had to file timely administrative claims with the agency, absent which their claims would be barred entirely.

According to the FDIC, Méndez asserts that such claims were filed, but the FDIC has questioned this, saying its records

show nothing but admitting that its records may be incomplete at the early stage of receivership. However, since we are affirming the district court's dismissal, the outcome is the same; Méndez' claims are foreclosed against the receivership banks whether the foreclosure results from the merits or time bar, and we need not pursue this inquiry.

<u>Affirmed</u>.