María I. VILLENEUVE, Plaintiff,

v.

AVON PRODUCTS, INC., Defendant.

Civil No. 14–1838(DRD).

United States District Court,
D. Puerto Rico.

Signed June 19, 2015.

Juan M. Frontera, Ufret & Frontera Law Firm, San Juan, PR, for Plaintiff.

Carl E. Schuster, Elizabeth Perez–Lleras, Lourdes C. Hernandez–Venegas, Schuster & Aguilo LLP, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is a defendant's Partial Motion to Dismiss "for failure to state a claim upon which relief can be granted." *See* Fed.R.Civ.P. 12(b)(6), Docket No. 11. For the reasons set forth below, the motion to partially dismiss is hereby GRANTED.

## INTRODUCTION

The instant case is an employment discrimination case based on age discrimination and sexual-orientation discrimination under Puerto Rico Law No. 100 of June 30, 1959, 29 L.P.R.A. § 146 *et seq.*, as amended, and Puerto Rico Law No. 80 of May 30, 1976, 29 L.P.R.A. § 185b *et seq.* Plaintiff Maria Villeneuve seeks "compensatory, double and liquidated damages, severance pay, back pay, and equitable, injunctive relief" and reasonable attorney's fees. *See* Complaint filed on November 20, 2014, Docket No. 1. Our jurisdiction constitutes diversity under 28 U.S.C. § 1332.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the allegations of the complaint, on January 5, 1998, Plaintiff Maria Villeneuve ("Villeneuve" or "Plaintiff") started working for Avon Products, Inc. ("Avon" or "Defendant") as the Caribbean Zone Manager. After several years of

working for Avon, Plaintiff was later transferred on May 1, 2005 to the position of District Zone Manager and was assigned to the 37th District in Guaynabo, Puerto Rico. *See* Docket No. 1. At some point between the month of May and June of 2012, Plaintiff was transferred to the position of Caribbean Call Center Correspondent to assume new responsibilities [1]. The situation took a turn for the worst on July 11, 2014 when Plaintiff was effectively terminated from her employment.

Plaintiff alleges that the reasons behind her employment termination were unlawfully based on age and sexual-orientation discrimination. Her sexual-orientation discrimination claim is specifically about her affective relationship with a lawyer who has filed several age-discrimination actions against Avon. The aforementioned lawyer had allegedly filed a federal-discrimination complaint against Avon on March 24, 2014, which, according to Plaintiff, led to Avon terminating Villeneuve's employment. As a result of this, Villeneuve alleges to have suffered emotional and mental damages. Plaintiff filed the instant action against Avon on November 20, 2014. *See* Docket No. 1.

Defendant has filed a Motion to Partially Dismiss the discrimination claim based on sexual orientation under Fed.R.Civ.P. 12(b)(6), Docket No. 11, and a timely Opposition was filed by Plaintiff, Docket No. 12.

## APPLICABLE LAW AND DISCUSSION

### The Motion to Dismiss Standard under Fed.R.Civ.P. 12(b)(6).

■ Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)'") (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955. *See e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

■ When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677–679, 129 S.Ct. 1937 (concluding that plaintiffs complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of

---

1. Plaintiff and Defendant disagree on the date of transfer. *See* Docket No. 1, p. 3, ¶ 18 and Docket No. 10, p. 3 ¶ 18.

the elements of a cause of action. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

■ Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

■ Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sánchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679–80, 129 S.Ct. 1937, (citing *Twombly*, 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernández*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiffs favor" ... "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir.2010) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernández*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937). In *Twombly*, the Court held, "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely" (internal quotation marks omitted), 550 U.S. at 556, 127 S.Ct. 1955. *See also Ocasio–Hernández*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini*, 628 F.3d at 29.

■ However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset*, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596. *See Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937 ("To be clear, we do not reject [ ] bald allegations on the ground that they are unrealistic or nonsensical.... It is the conclusory nature of

[the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth"). *See also Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir.2010) (the *Twombly* and *Iqbal* standards require District Courts to "screen [ ] out rhetoric masquerading as litigation."). However, merely parroting the elements of a cause of action is insufficient. *Ocasio–Hernández*, 640 F.3d at 12 (citing *Sánchez v. Pereira–Castillo*, 590 F.3d 31, 49 (1st Cir.2009)).

 The First Circuit recently outlined two considerations for district courts to note when analyzing a motion to dismiss. *García–Catalán v. United States*, 734 F.3d 100, 104 (1st Cir.2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly–Iqbal. Id.* at 104. Second, district courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id.* (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury) (internal citations and quotations omitted).

## Sexual Orientation Discrimination Claims

Puerto Rico's Constitution states that, "[n]o discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas." Puerto Rico Const. Art. 2 § 1. Law 100 of June 30, 1959, Puerto Rico's general employment-discrimination statute, encompasses these factors and others, recently

established, in order to provide wider protection to the working citizen.

Law 100 was amended by Law 22 of May 29, 2013. The purpose for such amendment was to establish a new public policy against employment discrimination based on sexual orientation and gender identity and further expand other persons protected under Law 100. *See* 29 L.P.R.A. § 151(7).

The term "sexual orientation" is defined by Law 22, as follows:

> Sexual Orientation.—**Means the ability of any person of having an emotional, affectional, or sexual attachment to persons of the other gender, the same gender, or more than one gender.** In order to accomplish all the purposes provided herein, this definition shall be interpreted as broadly as possible to extend the benefits thereof to any citizen who is a victim of discrimination, whether it is a one-time event or a pattern. (Emphasis supplied)

29 L.P.R.A. § 151(7).

 "Under Law 100, a plaintiff will have the initial burden of proof to establish a prima facie case by (1) demonstrating that he was actually or constructively discharged, and (2) alleging that the decision was discriminatory. If this minimal showing is made, the burden shifts to the employer to prove by a preponderance of the evidence that it had 'just cause' for its actions." *Baralt v. Nationwide Mut. Ins. Co.*, 251 F.3d 10, 16 (1st Cir.2001). At this Motion to Dismiss stage, Plaintiff need not establish these prima facie elements, instead all that is required is for Plaintiff to plausibly plead these elements. *See García–Catalán*, 734 F.3d at 104.

 At the outset, the court finds that the complaint fails the two pronged test under Law 100 that is required in order to prove a prima facie case against Defen-

dant. While Plaintiff is able to comply with the first requirement—demonstrating that she was terminated from her employment—Plaintiff fails to properly allege that such action was discriminatory. Plaintiff argues that her termination was carried out based on "her affective relationship with a person of a different gender than her, which is her longtime companion" who happens to be "a lawyer that filed cases of employment discrimination and/or unjust dismissal in federal court against defendant." Plaintiff further alleges in her opposition to the Motion to Partially Dismiss, see Docket No. 12, that it is immaterial to consider whether she is heterosexual or homosexual to be protected under Law 22. The Court disagrees.

▇▇▇▇ The Court notes that in the complaint, Docket No. 1, Plaintiff alleges that her termination was due to her "longstanding affective relationship" with a lawyer who has filed several federal cases against Defendant. The described conduct by itself does not constituted a protected class under the definition of "sexual orientation" that Law 100 provides, even when considering the expansive definition of the term in the Law 22 amendment. The purpose of the Law 22 amendment was to extend the protection that Law 100 provided to a new set of classes as outlined by Law 22's statement of motives. The definition focuses on the person's **ability** to have emotional, sexual or affectional attachments toward someone else of the same or a different gender. Hence, Law 100 prohibits an employer from firing someone **because of** their sexual orientation. However, an employee being terminated because the employer disapproves of the **professional legal conduct of the romantic partner** is totally different and is not considered as a discriminating event within the law. In the latter case, the profession-

al conduct of the partner of the employee plays no role in classes protected under the law as to the affected employee. Thus, no Law 100 interest would come into play. Plaintiff would argue that this definition was intended to be interpreted in such a broad way as to include relationships as a protected class under this definition. The Court disagrees with Plaintiff's reasoning.

▇▇▇▇ In arriving at our conclusion, the court notes that our jurisdiction is one of diversity under 28 U.S.C. § 1332 and hence we must apply state law in interpreting as well as in applying a state statute. *Railroad Commission of Texas v. Pullman Co. et al.*, 312 U.S. 496, 499–501, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Therefore, we proceed to interpret the statute pursuant to Puerto Rico's standard.

As stated by Puerto Rico's Civil Code, "[w]hen a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof." 31 L.P.R.A. § 14. Regarding the interpretation of statutes, the Supreme Court of Puerto Rico has expressed in the past that when the letter of the law is clear and free from all ambiguity, it cannot be interpreted in such a way as to provide something the Legislative Assembly did not intend or include. *Lasalle v. Junta Dir. A.C.A.A.*, 140 D.P.R. 694 (1996).[2] *See also Román v. Superintendente de la Policía*, 93 D.P.R. 685, 691 (1966); *Warner Lambert Co. v. Superior Court*, 101 D.P.R. 378, 558–559 (1973). Even under Federal Law, the Supreme Court of the United States has also been strongly adamant in regards to the matter of interpreting the law when its language is clear and free from all ambiguity: "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a

---

**2.** Judge has requested for the translation of this case to be available as soon as possible.

statute what it says there." *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

Pursuant to the statutory maxim used in both state and federal jurisdictions *inclusio unius est exclusion alterius,* when the Legislature expressly mentioned the new classes to be protected including sexual orientation and gender identity, excluding others previously not included, are excluded. *See Black's Law Dictionary* 701 (10th ed.2014). This is even more apparent in this case when the Legislative Assembly[3] was pellucid in the statement of motives that it was not their intention to include relationships into this new amendment. *See* 2013 L.P.R. 22 ("This Act is strictly limited to establishing that no person may be dismissed from his/her employment on the grounds of his/her sexual orientation or gender identity. Hence, this Act does not affect the juridical or legal structure in effect to recognize relationships").[4]

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's alleged sexual-orientation discrimination claim based only on **the professional conduct of the partner as a lawyer** (non-employee) of the employer which is not covered under the statute, Docket No. 11, is GRANTED. However, the Court notes that Plaintiff's age discrimination claims persist. Therefore, Defendant shall answer the complaint within the next fourteen (14) days.

**IT IS SO ORDERED.**

(S.B.238)

---

3. The Court includes a copy of the recently amended law and its motives, *see* Addendum A of the opinion.

4. The Court can rapidly provide a chamber of horrors example. We simply cannot accept the over encompassing interpretation suggest-

**(No. 22–2013)**

**(Approved May 29, 2013)**

## AN ACT

To establish the Public Policy of the Government of Puerto Rico against employment discrimination based on sexual orientation or gender identity, whether in the public or the private sector; amend subsection (aa) of Section 3 of Act No. 45–1998, as amended, known as the " 'Puerto Rico Public Service Labor Relation Act' "; amend subsection (1) of Section 2.1 of Article 2, subsection (42) of Section 3, and Section 6 of Act No. 184–2004, as amended, known as the "Human Resources Administration System of the Commonwealth of Puerto Rico"; amend subsection (d) of Section 17 of Act No. 115 of June 30, 1965, as amended; amend Sections 11.001, 11.007, 12.020, and 13.010 of Act No. 81–1991, as amended, known as the "Autonomous Municipalities Act"; amend Section 1, 1–A, 2, 2A, and add subsections (7) and (8) to Section 6 of Act No. 100 of June 30, 1959, as amended; in order to adjust the legislation in effect to the public policy of the Commonwealth of Puerto Rico as set forth in this Act; validate the constitutional mandate of guaranteeing human dignity and equality before the law by prohibiting the use of sexual orientation and gender identity of any citizen as grounds to deny, restrict, limit, impair, or hinder the protection provided hereunder; direct every agency, instrumentality, department, public corporation, municipality, and the Legislative Branch to modify their personnel regulations to clearly state the Public Poli-

---

ed by plaintiff. Such interpretation provides the employee the right to divulge to his lawyer partner the names of the employees being terminated from the company with potential confidential information related thereto all based on the partner's relationship.

cy set forth in this Act; establish exceptions; and for other related purposes.

## STATEMENT OF MOTIVES

In 1952, the People of Puerto Rico approved the Constitution of the Commonwealth of Puerto Rico. The Bill of Rights of our Constitution, which was inspired by the Universal Declaration of Human Rights issued in 1948 by the United Nations Organizations, states that "the dignity of the human being is inviolable," and that "all men are equal before the law."

The report of the Committee on the Bill of Rights filed on December 14, 1951 by its Chair Jaime Benitez, states the following with regard to said fundamental principles:

The purpose of this section is to clearly establish as a consubstantial basis all that ensues from the principle of the dignity of the human being and, consequently, the fundamental equality of all persons within our constitutional system. Equality before the law is above any accidents or differences, whether these arise from nature or culture. Any discrimination or privilege that is contrary to this essential equality contradicts the code of law of Puerto Rico. This constitutional provision strengthens our legal system in all appropriate matters and, in turn, requires it to broaden the scope of its provisions to fully enforce the provisions herein, [our translation] 4 JOURNAL OF THE CONSTITUTIONAL CONVENTION OF PUERTO RICO 2561 (Ed.2003).

The wisdom of the members of the 1952 Constitutional Convention also brought us Section 19 of the Bill of Rights, which reads as follows:

The foregoing enumeration of rights shall not be construed restrictively nor does it contemplate the exclusion of other rights not specifically mentioned which belong to the people in a democracy.

The power of the Legislative Assembly to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively.

One of the members of the Constitutional Convention reminds us that: The second sentence of Section 19 constituted, in the words of the Committee [on the Bill of Rights] 'the counterbalance of the first sentence.' The intent was to ensure the most liberal interpretation of human rights in Puerto Rico and provide for its growth without altering the constitutional language, while guaranteeing the Commonwealth the broadest margin for social and economic experimentation. [our translation] III JOSE TRIAS–MONGE, HISTORIA CONSTITUCIONAL DE PUERTO RICO 209 (1982).

The purpose sought by Senate Bill 238 is to broaden the provisions of the Island's legal framework to fully guarantee all individuals, regardless of their sexual orientation or gender identity, full protection and equal civil rights in the employment.

There are persons in Puerto Rico who, because of their sexual orientation or gender identity, are bereft of legal protection against employment discrimination in both the private and the government sectors. For instance, the code of laws in effect allows employers to dismiss their employees based on their sexual orientation or gender identity without being subject to the consequences and penalties provided in Act No. 100 of June 30, 1959 (Act No. 100). This means that there are no legal remedies available for any person who is dismissed, suspended, or discriminated against with regard to his/her salary, wage, or compensation, the conditions or privileges of his/her job, or is classified in

any way which tends to affect his/her employee status, through a suspension, layoff, or salary reduction, based on his/her sexual orientation or gender identity. Consequently, employers that engage in such practice are not liable for double damages for any harm they may cause to an employee, as it would be appropriate in cases involving discrimination based on age, race, color, sex, social or national origin or social condition, political affiliation, political or religious beliefs, or for being perceived as a victim of domestic violence, sexual assault or stalking. Basically, our code of laws provides for an absolute impunity that must be immediately corrected.

Courts have always closed their doors to any person who has resorted to them claiming employment discrimination based on sexual orientation. See the determination of the Court of Appeals regarding this matter in *Valentín Pérez v. Aguadilla Shoe Corporation,* KLCE 1998–00197 (Judgment issued on June 22, 1998):

> In brief, the only way in which Valentín-Pérez can prevail under Act No. 100, *supra,* is if it is established that he was discriminated against based on his gender, rather than his sexual preference. If he alleges that he was discriminated against based on his sexual orientation or preference (that is, for being homosexual), **the only remedy available under Puerto Rican law is a cause of action under Article 1802 of the Civil Code,** *supra.* In this case, the **presumptions and double damages provided in Act No. 100,** *supra,* **do not apply.** (Emphasis supplied)

The Court of Appeals reasserted the code of laws in effect in *Rodríguez Mercado v. Sistema Universitario Ana G. Méndez,* 2010 WL 6549509:

> Let's consider at this juncture the statement that the CFI erred when supporting the cause of action for discrimination based on **sexual orientation of the appellant, when certainly our code of laws does not recognize this type of discrimination.** Consequently, SUAGM alleges that Rodríguez–Mercado could not prove discrimination based on sex. Undoubtedly, the appellant seeks to induce into error by making such allegations. **It is true that the legislative structure that protects workers does not include discrimination based on sexual orientation.** (Emphasis supplied)

The United States District Court for the District of Puerto Rico interpreted Act No. 100, *supra,* in *Portugués Santa v. B. Fernández & Hnos., Inc.,* 438 F.Supp.2d 33 (2006), and agreed to close the door on claims for discrimination based on sexual orientation under the code of laws in effect:

> Law 100 of June 30, 1959, Puerto Rico's general employment discrimination statute, see *Cardona Jiménez v. Bancomercio de Puerto Rico,* 174 F.3d 36, 42 (1st Cir.1999), bars discrimination only on the basis of age, race, color, sex, social and national origin, social condition, political affiliation, and political and religious ideology. P.R. Laws Ann. tit. 29 § 146. **Law 100 does not bar discrimination on the basis of sexual orientation.**

> **The plaintiff concedes that existing law does not afford him relief for employment discrimination on the basis of being regarded as homosexual, but argues that the Court should use its authority to create a new cause of action under Puerto Rican law.**

> **The Court declines to create a new cause of action for employment discrimination on the basis of being regarded as homosexual.** It does not follow from the Supreme Court's decision in Lawrence or from statutes in

other states that this Court should create from whole cloth a new cause of action under Puerto Rico law. The fact that several states have statutes barring discrimination on the basis of sexual orientation only indicates that this is a matter for the legislatures and not for the courts. As the plaintiff states in his opposition, 'This case is about stating [sic] to define the boundaries of discrimination because of sexual orientation. No. 47, at 10. The Court merely applies the law; it does not make it. Legislation in areas popularly regarded as moral issues, should be reserved for democratically elected legislatures, and not for the courts.' (Emphasis supplied)

The doors of the Anti-discrimination Unit (UAD, Spanish acronym) of the Department of Labor and Human Resources of Puerto Rico, as well as the Equal Employment Opportunity Commission (EEOC), are closed to the people with regard to claims for discrimination based on sexual orientation or gender identity. The code of laws in effect prevents the filing of complaints with the UAD or the EEOC for employment discrimination based on sexual orientation or gender identity (except in very limited instances, for complaints about discrimination based on stereotypes, a variation of sex discrimination). Said agencies can only act on complaints about alleged violations of the discrimination categories provided by law that, as of today, do not include discrimination based on sexual orientation or gender identity in Puerto Rico or the United States.

The current public policy of the Commonwealth of Puerto Rico, under the Administration of Governor Alejandro García–Padilla, is "to eliminate any remnants of unequal treatment based on sex, sexual orientation, and gender from our code of laws and adjust it to the principles of equality and equal treatment under the Constitution of the Commonwealth of Puerto Rico." This was the stance of this Administration before the Supreme Court of Puerto Rico in Ex Parte A.A.R., in accordance with the statement filed on March 18, 2013 by the Attorney General of the Commonwealth of Puerto Rico, the Honorable Margarita Mercado–Echegaray.

With regard to the Judicial Branch, it is worth mentioning the provisions of the Code of Judicial Ethics:

Judges shall not engage in any conduct constituting discrimination based on [...] **sexual orientation.** Neither shall they allow any person appearing before the court or staff member under their supervision or control to engage in such conduct. (Emphasis supplied)

In view of the political relation between Puerto Rico and the United States, the public policy of the latter must be taken into account. The President of the United States, Barack H. Obama, stated the following during his inaugural address after being sworn-in for a second term on January 21, 2013:

It is now our generation's task to carry on what those pioneers began. For our journey is not complete until our wives, our mothers, and daughters can earn a living equal to their efforts. **Our journey is not complete until our gay brothers and sisters are treated like anyone else under the law—for if we are truly created equal, then surely the love we commit to one another must be equal as well.** (Emphasis supplied)

Furthermore, fifteen (15) states of the United States and the District of Columbia have enacted legislation prohibiting discrimination based on sexual orientation and gender identity, to wit: California, Colorado, Connecticut, Illinois, Iowa, Massachusetts, Maine, Minnesota, New Jersey,

New Mexico, Nevada, Oregon, Rhode Island, Vermont, and Washington. In addition, states such as Delaware, Maryland, New Hampshire, New York, and Wisconsin have enacted legislation prohibiting only discrimination based on sexual orientation. See, *Corporate Equality Index 2013*, http://issuu.com/humanrights campaign/docs/corporateequalityindex_ 2013).

This Act is strictly limited to establishing that no person may be dismissed from his/her employment on the grounds of his/her sexual orientation or gender identity. Hence, this Act does not affect the juridical or legal structure in effect to recognize relationships.

It is the intent of this Legislative Assembly, in accordance with the constitutional principles of equality before the law and human dignity, to prohibit employment discrimination based on sexual orientation or gender identity, whether in the public or the private sector.

## BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:

Section 1.—Declaration of Public Policy.—

It is hereby declared as the public policy of the Commonwealth of Puerto Rico to repudiate employment discrimination based on sexual orientation and gender identity in the public or the private sectors. In doing so, we hereby reassert that the dignity of the human being is inviolable and that all men are equal before the law.

Furthermore, it is hereby established that no employer shall suspend, refuse to hire, dismiss, or otherwise adversely affect the employment of any person for any of the above stated reasons.

Section 2.—Definitions.—

For purposes of interpretation and application of this Act within the labor field, the following terms shall have the meaning stated hereinbelow:

(a) Sexual Orientation.—Means the ability of any person of having an emotional, affectional, or sexual attachment to persons of the other gender, the same gender, or more than one gender. In order to accomplish all the purposes provided herein, this definition shall be interpreted as broadly as possible to extend the benefits thereof to any citizen who is a victim of discrimination, whether it is a one-time event or a pattern.

(b) Gender Identity.—Means the manner in which an individual identifies or recognizes him/herself in relation to his/her gender, with or without regard to the individual's designated sex at birth. In order to accomplish all the purposes provided herein, this definition shall be interpreted, as broadly as possible to extend the benefits thereof to any citizen who is a victim of discrimination, whether it is a one-time event or a pattern, and in accordance with the provisions of Public Law No. 111–84 (2009), the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act.

Section 3.—Subsection (aa) of Section 3 of Act No. 45–1998, as amended, known as the "Puerto Rico Public Service Labor Relation Act," is hereby amended to read as follows:

"Section 3.—Definitions.—

For the purposes of interpretation and application of this Act, the following terms shall have the meaning stated hereinbelow, unless another meaning can be clearly construed from the text:

. . .

(aa) Merit Principle.—Public procedure commitment that ensures personnel transactions whereby all career employees shall be selected, trained, promoted or retained

in their employment in consideration of their merit and skill, without discrimination on the basis of race, color, sex, birth, age, sexual orientation, gender identity, origin or social condition, physical disability, mental disability, veteran status, nor for their political or religious ideas or beliefs. Seniority shall be a factor in cases of equal capacity and suitability.

. . ."

Section 4.—Subsection (1) of Section 2.1 of Article 2 of Act No. 184–2004, as amended, known as the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico," is hereby amended to read as follows:

"Article 2.—Statement of Public Policy.—

Section 2.1.—Contents.—

The public policy of the Commonwealth of Puerto Rico concerning the Human Resources Administration of the agencies covered under this Act is that stated below:

1. To reassert merit as the principle that shall govern the Public Service, in order for the fittest to be the ones serving in the Government and for all employees to be selected, trained, promoted, treated and retained in their jobs in consideration of their merit and capability, without discrimination pursuant to the applicable laws, including discrimination on the basis of race, color, sex, birth, origin, or social condition, political or religious beliefs, age, sexual orientation, gender identity, for being a victim or perceived as a victim of domestic violence, sexual assault or stalking, veteran status, or for a physical or mental disability."

Section 5.—Subsection (42) of Section 3 of Act No. 184–2004, as amended, known as the "Public Service Human Resources Administration Act of the Commonwealth

of Puerto Rico," is hereby amended to read as follows:

"Section 3.—Definitions.—

For all purposes, the words and phrases listed herein shall have the meaning stated below:

. . .

(42) Merit principle.—Refers to the concept on which basis all public employees shall be selected, promoted, retained and treated in all matters concerning their employment based upon their capability and without discrimination on the basis of race, color, sex, birth, age, sexual orientation, gender identity, social condition or origin, political or religious beliefs, veteran status, or physical or mental disability.

. . ."

Section 6.—Section 6 of Act No. 184–2004, as amended, known as the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico," is hereby amended to read as follows:

"Section 6.—Recruitment and Selection.—

Agencies shall offer the opportunity of competing in their recruitment and selection procedures, to any qualified person, in attention to aspects such as: academic, professional, and work achievements, knowledge, capability, abilities, skills, work ethics; and without discrimination on the basis of race, color, sex, birth, age, sexual orientation, gender identity, social origin or condition, political or religious beliefs, veteran status, or physical or mental disability.

. . ."

Section 7.—Subsection (d) of Section 17 of Act No. 115 of June 30, 1965, as amended, is hereby amended to read as follows:

"Section 17.—Definitions.—

For all intents and purposes, the following words and phrases shall have the meaning set forth below:

(d) Merit Principle.—Refers to the concept that all employees of the education system should be selected, trained, promoted, retained and treated in all that concerns their job, based on their capabilities, without discrimination on the basis of race, color, sex, birth, age, sexual orientation, gender identity, origin or social condition, or political or religious beliefs.

. . .

Section 8.—Section 11.001 of Act No. 81–1991, as amended, known as the "Autonomous Municipalities Act," is hereby amended to read as follows:

"Section 11.001.—Municipal Personnel System–Establishment.—

Each municipality shall establish an autonomous system for the administration of the municipal personnel.

Said system shall be governed by the merit principle in order to provide a public service of excellence based on equity, justice, efficiency, and productivity without discrimination based on race, color, sex, birth, age, sexual orientation, gender identity, origin or social condition nor due to political or religious beliefs or for being a victim of domestic violence. Said system shall be consistent with the guidelines of the Training and Labor Affairs Advisory and Human Resources Administration Office (OCALARH, Spanish acronym), adopted by virtue of Act No. 184–2004, as amended, known as the 'Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico.'

. . ."

Section 9.—Section 11.007 of Act No. 81–1991, as amended, known as the "Autonomous Municipalities Act," is hereby amended to read as follows:

"Section 11.007.—Provisions on Classification of Positions and Compensation—Recruitment and Selection.—

Every municipality shall offer the opportunity to compete for career positions to any qualified person who wishes to participate in the public functions of the municipality. This participation shall be established according to merit, without discrimination based on race, color, sex, birth, age, sexual orientation, gender identity, social origin or condition, or religious or political beliefs.

. . ."

Section 10.—Section 12.020 of Act No. 81–1991, as amended, known as the "Autonomous Municipalities Act," is hereby amended to read as follows:

"Section 12.020.—Discrimination Prohibited.—

No discrimination based on race, color, sex, birth, sexual orientation, gender identity, origin or social status, or for political or religious ideas or beliefs, may be established in the implementation or operation of the provisions of this Act."

Section 11.—Section 13.010 of Act No. 81–1991, as amended, known as the "Autonomous Municipalities Act," is hereby amended to read as follows:

"Section 13.010.—

During the process of drafting a territorial plan . . . the Municipality . . .

The mayor shall appoint the members of the Community Board for a term of two (2) or three (3) years, keeping not less than one-third (1/3) of the members during any change in the constitution of the Board. The Community Board shall be appointed according to the procedures provided in this Section for the appointment of municipal employees. Members shall hold office during the term of their appointments or until their successors take

office. Said Boards shall be the representative bodies of the various ideological, social, and economic sectors of the community in which they are constituted. To that end, the municipality shall not discriminate based on race, color, sex, birth, sexual orientation, gender identity, origin or social condition, nor for political or religious belief when appointing or confirming the members of the Community Boards.

. . ."

Section 12.—Section 1 of Act No. 100 of June 30, 1959, as amended, is hereby amended to read as follows:

"Section 1.—Discrimination based on age, race, color, sex, sexual orientation, gender identity, social or national origin, social condition, political affiliation, political or religious beliefs, or for being a victim or perceived as a victim of domestic violence, sexual assault or stalking.—

Any employer who discharges, lays off or discriminates against an employee regarding his/her salary, wage, pay or remuneration, terms, rank, conditions or privileges of his/her job, or who fails or refuses to hire or rehire a person, or who limits or classifies his/her employees in any way which tends to deprive a person of employment opportunities, or that affects his/her employee status because of his/her age, as defined below, race, color, sex, sexual orientation, gender identity, social or national origin, social condition, political affiliation or political or religious beliefs of the employee or applicant for employment, or for being a victim or perceived as a victim of domestic violence, sexual assault or stalking:

. . ."

Section 13.—Section 1–A of Act No. 100 of June 30, 1959, as amended, is hereby amended to read as follows:

"Section 1–A.—Publishing; Announcements.—

It shall be unlawful for any employer or organization to publish or circulate, or allow the publication or circulation of announcements, notices or any other form of diffusion, denying equal employment opportunities, directly or indirectly, to any person indiscriminately, based on his/her race, color, sex, marital status, sexual orientation, gender identity, social or national origin, social condition, political affiliation or political or religious beliefs, or for being a victim or perceived as a victim of domestic violence, sexual assault or stalking, or without just cause, because of age, or by establishing limitations which may exclude any person because of his/her race, color, sex, marital status, sexual orientation, gender identity, social or national origin, social condition, political affiliation or political or religious beliefs, or for being a victim or perceived as a victim of domestic violence, sexual assault or stalking, or because of his/her age, without just cause.

. . ."

Section 14.—Section 2 of Act No. 100 of June 30, 1959, as amended, is hereby amended to read as follows:

"Section 2.—Discrimination by Labor Union.—

Any labor organization which limits, divides or classifies its members in any manner that deprives or tends to deprive anyone who aspires or is entitled to become a member of said organization, of an employment opportunity based on his/her age, race, color, religion, sex, marital status, sexual orientation, gender identity, social or national origin, political affiliation, political beliefs or social condition, or for being a victim or perceived as a victim of domestic violence, sexual assault or stalking:

. . ."

Section 15.—Section 2–A of Act No. 100 of June 30, 1959, as amended, is hereby amended to read as follows:

"Section 2–A.—Apprenticeship, Training or Retraining.—

Any employer, labor organization or joint labor-management committee that controls apprenticeship, training or re-training programs, including on-the-job training programs, which discriminates against a person based on his/her race, color, sex, marital status, sexual orientation, gender identity, social origin or condition, political affiliation, political or religious beliefs, or for being a victim or perceived as a victim of domestic violence, sexual assault, or stalking, or because of his/her advanced age, without just cause to be admitted to, or employed in any apprenticeship or other training program:

(a) Shall incur civil liability:

. . ."

Section 16.—Subsections (7) and (8) are hereby added to Section 6 of Act No. 100 of June 30, 1959, as amended, to read as follows:

"Section 6.—Definitions.—

The following terms, as used in this Act, shall have the following meanings:

(1) Age.—means . . .

(2) Employer.—includes . . .

(3) Labor Union.—has the same meaning . . .

(4) Stalking.—shall mean . . .

(5) Sexual Assault.—shall mean . . .

(6) Domestic Violence.—shall mean . . .

(7) Sexual Orientation.—Means the ability of any person of having an emotional, affectional, or sexual attachment to persons of the other gender, the same gender, or more than one gender. In order to accomplish all the purposes provided herein, this definition shall be interpreted as broadly as possible to extend the benefits thereof to any citizen who is a victim of discrimination, whether it is a one-time event or a pattern.

(8) Gender Identity.—Means the manner in which an individual identifies or recognizes him/herself in relation to his/her gender, with or without regard to the individual's designated sex at birth. In order to accomplish all the purposes provided herein, this definition shall be interpreted, as broadly as possible to extend the benefits thereof to any citizen who is a victim of discrimination, whether it is a one-time event or a pattern, and in accordance with the provisions of Public Law No. 111–84 (2009), the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act.

Section 17.—Every agency, instrumentality, department, public corporation, municipality, and the Legislative Branch are hereby directed to modify their personnel regulations to clearly state the Public Policy set forth in this Act.

Section 18.—The Training and Labor Affairs Advisory and Human Resources Administration Office (OCALARH, Spanish acronym), in conjunction with the Department of Labor and Human Resources of Puerto Rico are hereby directed to draw up a compliance, education, and training protocol with regard to the public policy of eradicating all types of discrimination including those based on sexual orientation and gender identity, as defined in this Act, and which shall be adopted by every government agency and applicable to all private sector employers, in accordance with this Act. Field experts shall be consulted for protocol drafting and presentation purposes. OCALARH and the Department of Labor and Human Resources of Puerto Rico shall have ninety (90) days after the approval of this Act to draw up said protocol.

Section 19.—Exceptions and Exclusions.—

By virtue of constitutional provisions regarding the separation of Church and State, namely, the First Amendment to the Constitution of the United States of America and Section 3 of Article II of the Constitution of the Commonwealth of Puerto Rico, the provisions of this Act shall not apply to Churches or religious congregations, organizations, societies, institutions, as well as any entity, for-profit or non-profit corporations, faith-based and community organizations, educational institutions, academic curriculums, service rendering or associations linked to a Church or religious congregation, whose creed, dogma, or occupational requirements are clearly inconsistent with the interests upheld by this Act.

None of the provisions of this Act constitutes a prohibition, limitation, or grounds to deny the hiring by the Commonwealth, its agencies, instrumentalities, public corporations, and municipalities, of faith-based and community organizations, educational institutions, entities or associations linked to a Church or religious congregations, whose constitution, origin, or purpose are based on a religious belief, creed, or dogma. Provided, that the aforementioned entities shall not refuse to render services to third parties based on the discriminatory grounds defined in this Act in any activity that is funded or defrayed, in whole or in part, with Federal or Commonwealth funds.

Section 20.—Interpretation Clause.—

If the provisions of any other Act are inconsistent or incompatible with the provisions and matters expressly included in this Act, the provisions of this Act shall prevail.

Section 21.—Scope.—

None of the provisions of this Act shall affect any legislation with regard to marriage or the adoption process.

Section 22.—Separability Clause.—

If any article, subsection, part, paragraph, or clause of this Act or the application thereof to any person or situation were held to be unconstitutional by a Court with competent jurisdiction, such holding shall not affect or invalidate the remaining provisions of this Act, and the effect thereof shall be limited to the subsection, part, paragraph, or clause of this Act, or the application thereof, held to be unconstitutional.

Section 23.—Effectiveness.—

This Act shall take effect immediately after its approval.

### CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 22–2013 (S.B. 238) of the 1st Regular Session of the 17th Legislative Assembly of Puerto Rico:**

**AN ACT** to establish the Public Policy of the Government of Puerto Rico against employment discrimination based on sexual orientation or gender identity, whether in the public or the private sector; amend subsection (aa) of Section 3 of Act No. 45–1998, as amended, known as the " 'Puerto Rico Public Service Labor Relation Act' "; amend subsection (1) of Section 2.1 of Article 2, subsection (42) of Section 3, and Section 6 of Act No. 184–2004, as amended, known as the "Human Resources Administration System of the Commonwealth of Puerto Rico"; etc.

has been translated from Spanish to English and that the English version is correct. In San Juan, Puerto Rico, on this 24th day of October, 2014.

Juan Luis Martinez Martinez

Acting Director.